130 Ill. App.2d 970 (1970)
268 N.E.2d 35
FIRST GRANITE CITY NATIONAL BANK, a National Banking Corporation, Plaintiff-Appellee,
v.
LUCILLE CHAMPION et al., Defendants-Appellants.
No. 69-85.
Illinois Appellate Court  Fifth District.
December 28, 1970.
Rehearing denied February 24, 1971.
*971 Gilbert Rosch and Nick D. Vasifeff, of Granite City, for appellants.
Maurice Dailey, of Granite City, for appellee.
Judgment affirmed.
Mr. PRESIDING JUSTICE EBERSPACHER delivered the opinion of the court:
*972 The plaintiff brought an action for damages against the defendants and after a bench trial, a $33,000.00 judgment was entered against the defendants. The appeal is from the judgment.
The factual situation which led to the litigation between the parties hereto as supported by the evidence is as follows: Dowdy a building contractor in the Granite City area in 1954 embarked upon the building of six residential properties. He applied for a series of construction loans from the First Granite City National Bank but was advised that said loans could not be made without his first obtaining, as additional security, the signatures of financially responsible persons who would guarantee repayment of the loans. Dowdy responded by furnishing to the bank documents executed on behalf of Madison County Federal Savings and Loan Association by R.Y. Champion as executive secretary of the Association (a position he had held for a number of years). These documents stated that in consideration of the Bank making a loan to Dowdy the Association guaranteed to make a permanent loan upon the same property upon completion of the building or within 9 months from the date of the construction loan. Although it is not recited in the documents presented to the Bank, Dowdy paid Champion a fee of 2% of the construction loan, in cash, at Champion's request. The Bank then made the 6 construction loans which were subsequently paid off by the Association. Upon the first construction loan being made, the President of the Bank discussed with Champion the mode of the disbursement of the construction loans and it was agreed that checks containing a lien waiver clause were satisfactory for use in paying third persons at Dowdy's request and that money for payroll purposes could be charged against the construction account and deposited in Dowdy's personal account. Champion was confident of Dowdy's method of operation, had worked with him previously and such procedure was satisfactory to him. The funds from these 6 construction loans had been disbursed in that manner.
After the transactions with respect to the 6 houses had been apparently satisfactorily concluded, at least in so far as the Bank and Association were concerned, about March 1956 Dowdy applied to the bank for 8 additional construction loans on 8 different properties. Prior to the loans being made, Mr. Champion came to the bank and advised that because of personal reasons upon which he did not care to elaborate he and his wife would like to personally guarantee mortgages subsequently to be made by the bank to Dowdy to be handled in arrangements similar to those previously signed by the Association. The Bank from previous experiences with Champion and his wife considered the financial condition of the Champions satisfactory and was willing to accept the guarantee of the loans by Champion and his wife. The bank thereupon took six *973 6-month and two 9-month mortgages from Dowdy and his wife on the 8 properties; Champion and his wife executed similar agreements to those which the Association had previously executed on the 6 properties and the construction accounts were set up.[1] Dowdy agreed with Champion to let Champion insure the properties and agreed to pay and did pay Champion 2% of each of the construction loans. Before any work was commenced on the properties, further discussions of the matter of disbursement of the funds was discussed with Champion and the past practice of disbursal was agreed upon, including direct payment into Dowdy's account. The only difference between the transaction involving the 6 first construction loans and the second 8 loans was that rather than Champion signing in his secretarial capacity for the Association he and his wife Lucille, undertook personally to act in lieu of the Association on the 8 loans. The Bank had loaned and disbursed $83,000.00 on the 8 loans of which $44,609,79 was paid into Dowdy's personal account. The record does not disclose what if any portion of the money deposited in Dowdy's account was used for other than labor, material and miscellaneous expenses incurred in the contracting operations of Dowdy. The building on the 8 properties was substantially completed in the fall of 1956 and the Bank requested payment from Champion on the 8 loans, the first of which was due on November 10, 1956 and the maturity of the last of which expired on January 17, 1957, but Champion failed to take up the loans or make loans to Dowdy.
On November 20, 1956, Dowdy and his wife with Champion's knowledge deeded the properties to Glynn Hodge a real estate broker acting as collection agent for Champion and he immediately started collecting rentals and attempted to sell some of the properties for Champion. At that time there were neither any judgments or mechanic's liens against the properties. On December 31, 1956, Hodge and his wife deeded the *974 property back to Dowdy. On December 21, 1956, a mechanic's lien had been filed against 6 of the 8 properties. On January 2, 1957, Dowdy and his wife executed a mortgage of the first 6 properties and 7 of the 8 properties to Lucille Champion to secure their installment note in the amount of $8,800.00 with interest payable $100.00 per month beginning February 1957; $8,000.00 of the proceeds of which were used to pay off liens or other obligations for materials of Dowdy, by Champion, and $800.00 was retained by Champion for paying off the $8,000.00 and securing lien waivers.
On March 5, 1957, Dowdy and his wife deeded the 8 properties with other property to Champion and his wife and at about the same time, in March 1957, Champion paid the Bank $15,000.00, which, according to the Bank's witnesses, was at the direction of Champion applied to the Dowdy loans as the Bank saw fit, based on construction and the Bank's ideas about the liquidation of values; and according to the Bank's witness, Champion was advised of the manner of application and at no time registered any complaint or objection to its manner of application. The Bank's witness further testified that at that time Champion stated that he would in the near future be in a position to make additional payments on the debts. In the meantime Champion, on several occasions, had been requested to take over the Bank's mortgages, pay them off, make new loans, or in some way work out arrangements whereby the obligations of the Champions to the Bank would be satisfied.
Champion testified, that he had not directed how the $15,000.00 was to be applied nor did he have any knowledge of the manner of application, and he did not recall the Bank's demands upon him. Champion could not recall any conversations with the Bank relative to the manner of disbursement of either the first 6 construction loans or the last 8, and states that he was under the impression that the Bank was disbursing the proceeds of the Dowdy construction loans in accordance with a generally accepted procedure for disbursement of construction loans and that if he got any memorandum from the Bank concerning disbursements or balances due, that he had turned them over to his counsel, but stated "I am not saying I didn't get them", and admitted that he had never made objection to the manner of disbursement by the Bank. During March and April 1957, Champion negotiated sale on contract of two of the properties and received down payments.
Champion also testified that at the time of the March 5, 1957 deed of the properties to him, he felt that by obtaining the real estate he could dispose of it, pay off the bank and come close to the break even point. Dowdy testified that prior to deeding the properties to Champion, he and his wife conferred with Champion who agreed to pay all obligations *975 and told them Dowdy could start two more houses, pay all obligations on loans and as the properties were disposed of, Dowdys could pay everything they owed, and that Dowdy would get his profit after the real estate was disposed of; that Champion said he was going to pay the obligations on the properties and would then dispose of them and Dowdy would get his profit. He further testified that he had asked Champion in November of 1956 to make final loans on 7 of the properties, the 8th not yet being completed, and that Champion advised that funds were not available to make the loans. He also testified that at the time the construction loans were made Champion was advised that the construction loans were in a lesser amount than would be necessary to complete the buildings and that in March 1956 he discussed with Champion the amounts due various subcontractors and material men, and that about December 1956 it was agreed that he would convey to Champion who would pay all outstanding obligations, and give him his profit as the properties were disposed of.
In May of 1957, Champion paid the bank an additional sum of $410.65, apparently on the Dowdy debts. On May 29, 1957, Dowdy was declared Bankrupt and Champion was notified of the filing. On July 16, 1957, Champion and his wife executed an agreement with the Bank which recited that the Bank held Dowdy mortgages and "the amounts of which mortgages are guaranteed" by Champion; by it the Bank agreed to submit its proof of claim in the bankruptcy proceedings "in such manner as to show the payments under the guaranty" of Champions "thereby to the best of its ability to secure and protect the amounts paid to the Bank by virue of said guaranty". By it Champions agreed to hold the Bank harmless in the bankruptcy proceedings and agreed to pay to the Bank on demand any deficiency in unrecovered interest arising after the date of the petition in bankruptcy, and further agreed to pay attorney fees not to exceed $1,500.00 and costs incurred by the Bank in the bankruptcy proceeding. The instrument states that its purpose is that the Bank by its claim protect Champions and the monies expended "in pursuance of their guaranty".
On November 12, 1957, Champions deeded all of the properties which Dowdys had deeded them to the Trustee in Bankruptcy. From November 20, 1956 to November 12, 1957 the Champions treated the 8 properties here involved as their own, taking possession, collecting the rentals and executed contracts for deeds of some of them.
Subsequently the Bank instituted foreclosure proceeding on each of the properties. Champions were parties to the foreclosure proceedings, and had been advised they were going to be filed and a series of notices demanding payment of the defaulted notes and mortgages of Dowdy had *976 been delivered to them in 1958. Numerous lienholders were also parties to the foreclosure. The properties were sold at a foreclosure sale and the Bank paid the amount that it considered each parcel to be worth, the total bids being $87,875.00. A deficiency decree on each of the properties was entered for the Bank "itself and as Trustee for defendant R.Y. Champion" against Dowdys; the total deficiency being in the amount of $31,636.30. A receiver had rented some of the properties and after the receiver was discharged and the Bank took title the bank rented some of them and disposed of some of them. Champion was advised of proposed sales and 2 were sold.
In the present action the Bank has filed suit against the Champions. Its amended complaint included the documents Champions had executed agreeing to make the permanent loans on the 8 properties, and alleges the Bank's reliance on them in making the construction loans to Dowdy; it alleged payments on the loans by Champion and the Champions failure and refusal to perform, as well as the Bank's demands upon Champions after the conveyance of the properties to Champions and their possession of the properties; it alleged the foreclosure proceedings and the deficiences without reference to amount. The amended complaint also alleged that by reason of Champion's failure to perform on the documents, the Bank had been forced to expend large sums and that Defendants owed the Bank large sums after due and proper set offs as a result and in the alternative that defendants owed them the sums loaned Dowdy in reliance upon Champion's agreements. The Bank prayed for an accounting between the Bank and Champions and payment of sums which the Bank had been obliged to expend by reason of the breach of the agreements with interest from the date of expenditure allowing the just set offs to which Champions were entitled; the Bank prayed for judgment for the amount of the Dowdy construction loans or such other funds as might be found due it, and for such further relief as might appear to be just.
Champion's motion to dismiss alleged that the amended complain did not state a cause of action; that if a cause of action existed the Bank was not a proper party; that the Bank was estopped from proceeding against Champions because it had elected to foreclose; that the complaint did not show the Bank suffered damages, and that the Bank was attempting a double recovery since they had taken title to the properties. Here Champions as appellants contend only that the plaintiff Bank failed to allege "wherein it actually sustained damages" and cite no authority to support their contention that the trial court erred in not sustaining their motion. They did not file a motion to make the complaint more specific nor request a bill of particulars. The motion to dismiss *977 was properly denied by the trial court as was the subsequent motion to vacate the order denying the motion to dismiss.
The issues were joined upon the filing of a counterclaim and amended answer in which appellants alleged misconduct of the Bank in the manner of payout of the construction loans, satisfaction of the Bank's indebtedness by foreclosure and excuse of performance because of incumbrances placed upon the properties in the nature of liens.
The trial court entered an order containing findings of fact to the effect that the loans were made in reliance upon the agreements made by defendants; that the Bank disbursed the funds in a due and proper manner as previously established by a course of conduct of the parties, that Champions were obligated to carry out the terms and conditions of the agreements, that the Bank had exercised due care and concern for Champions in all their actions, keeping them fully advised and affording Champions the opportunity to purchase the properties after the foreclosure sale up to and including the expiration of the period of redemption for each proceeding; that at the expiration of the equity of redemption and proper offsets arising out of collections by the receiver, the amount remaining due the Bank was determined and fixed as of that date. The court then determined the amount due on each of the properties taking into account the proper credits and charges, found the sum of $33,493.33 together with interest thereon from May 29, 1961 to be due and rendered judgment to the Bank in that amount, and held for the Bank on Champions' counterclaim.
We, of course, will not disturb the findings of the fact of the trial court unless they are manifestly against the weight of the evidence. Brown v. Zimmerman, 18 Ill.2d 94, 163 N.E.2d 518. Here the determination of the case depends largely upon the facts found in the record and we find ample evidence to support the findings.
 1, 2 Appellants Champions first contend that the use of the word "guarantee" in the alleged documents is not determinative of the obligation and points out that the 8 documents did not provide for the payments of deficiencies but were only agreements to provide a permanent loan implying that the property would be clear and not encumbered with mechanic's liens. This contention completely overlooks the evidence and finding that the parties themselves treated the obligation as more than simply an obligation to make loans to Dowdy. It is not a question of the court's construing the documents to enlarge the undertaking of Champions; they themselves construed their undertaking when they could have stood upon the strict terms of their obligation.
Defendants contend the judgment should be reversed on the grounds: (1) the plaintiff was negligent in disbursing loan proceeds; (2) defendants *978 were not obligated to make loans on encumbered property; (3) plaintiff failed to prove any actual damage.
 3 With reference to the Bank depositing a portion of the construction loan funds in Dowdy's personal account; there was evidence that this was in keeping with the past practice of the same parties, that the manner of payout was agreed to and acquiesced in by Champion, and there is no evidence that the funds so disbursed to Dowdy's personal account were used for other than payments necessary in his contracting business. Furthermore, Champion never ascribed the manner of payout as the reason for the failure to fulfill his obligation at any time prior to his pleadings in this case.
Their contention that they were justified in their refusal to make the loans because of liens on the properties, also first made in the pleadings in this case, is not supported by the evidence that even before any claims for liens were filed their agent took title, and after liens were filed he and his wife took title, and paid the Bank $15,000.00 to credit on the construction loans. Neither is it consistent with Mrs. Champion's taking a mortgage on the property, the proceeds of which were disbursed to settle claims of Dowdy's creditors on the properties.
Appellants contend that the deficiency judgments are not a proper element of the measure of damages and that the rule is that for breach of contract to make a loan, only nominal damages can be recovered. They point out that neither Dowdy nor the Bank sought to get the loans made elsewhere. In making this contention they shift from the position that Champions are protected by the rules applicable to guarantors or suretys, to the position that their obligation was only to make the loans and cite cases in which the action was by the prospective lendee against the prospective lendor, and cite Restatement of the Law of Contracts § 343, Damage for Breach of Contract to Lend Money. The applicable rule is found in Restatement of Contracts § 345, (2) Damages for Breach of Contract for the Benefit of Third Person which is as follows:
"For breach of contract to render a performance owed by the promisee to a third person, the promisee and creditor beneficiary can each get judgment for the value of the promised performance with interest so far as permitted by the rules stated in § 337, plus compensation for other unavoidable injury to the plaintiff that the defendant had reason to foresee when the contract was made, less the amount that can reasonably be saved by the plaintiff by reason of the breach."
 4 We believe that the language found in Berea College v. Killian, 304 Ill. App. 296, 26 N.E.2d 650, a case concerning the determination of a balance due in such situation is here applicable. There the Court affirmed a summary judgment in which the measure of damages was determined *979 to be the amount set forth in the deficiency decree less credit given for income during the period of redemption. The court there (p. 301, 26 N.E.2d at p. 652) stated:
"The defendants as guarantors are not concerned legally with the steps taken to foreclose the mortgage. Plaintiff could have sued defendants for the entire balance due on the notes before the foreclosure if they had seen fit to do so and the guarantors were liable to a judgment for the full amount due on said notes. Surely they cannot be heard to complain in this cause about the foreclosure proceeding which materially decreased the amount of the indebtedness they were liable for."
In Loeb v. Stern, 198 Ill. 371 at page 383, 64 N.E. 1043 at page 1048, our Supreme Court adopted the following language:
"In the absence of any fraud or irregularity in the foreclosure proceeding, the price at which the property is sold is the conclusive measure of its value as a security of the notes in question, and for the purposes of this suit."
 5 That case is also authority for the proposition that by electing to foreclose, the Bank did not waive any of its rights to recover on the agreements.
We are therefore of the opinion that the court properly refused to hear evidence offered of other market values.
Therefore for the reasons stated herein, the judgment of the trial court is affirmed.
Judgment affirmed.
CHAMBERLAIN and GOLDENHERSH, JJ., concur.

SUPPLEMENTAL OPINION UPON DENIAL OF PETITION FOR REHEARING
In their petition for rehearing defendants have contended that in their opinion this Court has overlooked the proposition of law to the effect that; if a mortgagee exercises his right to procure a deficiency judgment in the foreclosure action against any defendant personally liable, he is bound in that proceeding also to exercise the same right against any other defendant who is a necessary party to the action and who is personally liable and before the Court, and, if he does not, he is barred from seeking a personal judgment in a subsequent proceeding against any such defendant, notwithstanding it is not obligatory for the mortgagee in a foreclosure action to ask for judgment against the defendant personally liable for a deficiency as stated in I.L.P., Mortgages § 487, and for which they cite the case of Berea College v. Killian, et al., 304 Ill. App. 296, 26 *980 N.E.2d 650 and Skolnick v. Petella, 304 Ill. App. 331, 26 N.E.2d 646 and the Supreme Court's opinion in that case at 376 Ill. 500, 34 N.E.2d 825, as authority.
Whether plaintiff was barred from recovery in this cause by reason of a deficiency judgment having been entered in the foreclosure proceedings, although such deficiency was alleged in the amended complaint, was not raised in the trial court by either defendants' motion to dismiss the amended complaint, the motion to vacate the order denying the motion to dismiss the complaint, defendants' motion for judgment on the pleadings, the answer to the amended complaint, nor in the answer to amendments to the amended complaint. Neither the complaint to foreclose, nor any deficiency judgments, nor any decrees or orders of the court in the foreclosure proceedings were abstracted.
Appellants' brief set out 5 issues presented for review which did not include that the action was barred because of a deficiency judgment being entered in the trial court. Neither were authorities on such proposition included in appellants' Points and Authorities, and neither the Berea College case, supra, the Skolnick case, supra, nor I.L.P. authority, cited in the Argument section of appellants' brief. Appellee's brief cited the Berea College case, supra, as authority on the measure of damages; appellants filed no reply brief.
 6 The issue which appellants now seek to raise was not included in the record, and if such issue was presented below, was abandoned on appeal. We have therefore denied the petition for rehearing and confirm our opinion in this cause.
CHAMBERLAIN and GOLDENHERSH, JJ., concur.
NOTES
[1] These agreements were in the form of 8 letters addressed to the Bank, which recited that they were in consideration of the Bank making a loan to Dowdy and his wife secured by mortgage on the respectively described property and were dated from March 7, 1956 through July 17, 1956. Six of the letters contained the following pertinent language:

"We hereby, guarantee to you that we will make the above individuals a loan on the described property upon completion of the dwelling that is to be constructed thereon or at a date not later than 9 months from this date in an amount sufficient to pay the aforesaid mortgage, interest and expenses in full.
The other 2 of the letters contained the following pertinent paragraph:
"We hereby guarantee to you that we will make the above mentioned parties a loan upon completion of their property, or not later than (November 10, 1956) (January 17, 1657) in an amount sufficient to pay your loan in full."
The language of these two is identical (except for dates) to the language of the six documents delivered by the Association on the six properties previously completed and paid off by the Association.