EDWARD F. SUTKOWSKI, Admr. *de Bonis Non* of the Estate of Peter Demko, Deceased, Plaintiff-Appellant, *v.* UNIVERSAL MARION CORPORATION, Defendant-Appellee.

(No. 71-77; )

Third District—April 18, 1972.

James L. Hafele, of Peoria, for appellant.

Richard Quinn, of Peoria, for appellee.

Mr. PRESIDING JUSTICE STOUDER delivered the opinion of the court:

Plaintiff, Edward Sutkowski, as administrator of the estate of Peter Demko, deceased, brought this action in the Circuit Court of Peoria County seeking to recover damages from Universal Marion Corporation, defendant, on account of the wrongful death of the decedent. The action, a products liability case, sought recovery for breach of warranty and strict liability. The jury found in favor of defendant, post trial motions were denied and this appeal follows. The only errors assigned on this appeal relate to plaintiff's action based on strict liability.

The basic facts are not substantially disputed, the principal dispute being the conflicting inferences which may be drawn therefrom. In 1961 the defendant manufactured and sold to the Peabody Coal Company (not a defendant in this action) a piece of strip mining equipment in the nature of a "steam shovel". The machine is mammoth, weighing in excess of a thousand tons and is as tall as a ten story building. The machine is supported on and moved by four crawler type tracks located at each of the four corners of the machine, each track being approximately twenty-two feet long and nine feet high. The machine is designed to remove the materials (dirt, stone, etc.) lying over a seam of coal and deposit them to one side forming a high mound or spoil bank. The machine which is electrically powered operates continuously 24 hours a day.

On the 25th of November, 1966, Peter Demko, the deceased, hereinafter referred to as the plaintiff, was employed by Peabody Coal Company at its Midland Electric Mine in Farmington, Illinois. During the first shift Demko informed the machine operator that he was leaving the machine and about five minutes later was discovered under the machine crushed to death by a large stone. In getting in and out of the machine persons ascend and descend at a point midway between the front crawlers and rear crawlers and then proceed to the rear between the rear crawlers. The distance between the front crawler and the rear crawler on the same side was estimated to be ten to twelve feet and there is nothing in this area to obstruct rocks, dirt and other debris from rolling or sliding down the spoil bank underneath the machine. The rock which killed Demko weighed approximately two tons and its approximate dimensions were eight feet by four feet by two and a half feet. Other employees testified that it was not uncommon for rocks and other debris to fall from the spoil bank underneath the machine. They also testified

that the machine was in the same condition on November 25, 1966, as it was when it was assembled at the job site in 1961.

In seeking to reverse the judgment of the trial court denying his motion for a new trial the plaintiff makes three principal assignments of error. First, according to plaintiff, the trial court erred in refusing to permit one of his experts from expressing any opinion concerning alternative designs. Second, the court refused to permit the introduction of evidence that alternative designs were feasible, such evidence consisting of testimony and photographs that the machine in question had been modified after the occurrence. Finally plaintiff argues the trial court erred in excluding his tendered issues instruction.

After Demko was killed it appears from excluded testimony and exhibits that at the recommendation of Jayne, an Illinois Mine Inspector who testified on behalf of plaintiff, a barrier was constructed in the space between the front and rear crawler consisting of tires and heavy chains designed to prevent the sliding or rolling of debris from the spoilbank under the machine. The post occurrence modifications in the stripping shovel were first sought to be introduced into the case by plaintiff by questions asked of Jennings, a fellow employee testifying in behalf of plaintiff. When objections were interposed by defendant to photographs showing such post occurrence changes presented to Jennings for identification the court sustained such objections and thereafter the plaintiff made an offer of proof outside the presence of the jury which described the barrier. The plaintiff also sought to introduce the same testimony by exhibiting photographs to Jayne, the mining safety engineer and another expert witness Herman Ludwig, a professor at Wayne State University. On each occasion the defendant objected to the photographs or any testimony regarding the changes and the court sustained the objections. These rulings are assigned as error on this appeal.

Jayne, a state mining inspector, testified concerning his experience and qualifications as well as his examination of the scene of the incident. Objection to his qualifications as an expert were overruled by the trial court and no question of his qualification is raised on this appeal. After any testimony regarding the post occurrence barrier had been excluded Jayne testified to the hazardous conditions of exit and entrance to and from the machine. He was asked, "Now Mr. Jayne, do you have an opinion as to whether that hazard could have been reduced in any fashion?" Objection to the question was made by defense counsel and sustained by the court although the record does not indicate that defense counsel specified any reason for his objection or did the court indicate any reason for sustaining the objection. Thereafter out of the presence of the jury plaintiff's counsel made the following offer of proof,

"I offer to prove by this witness that upon his finding that a hazardous condition existed, he made a recommendation. I offered to do this by direct testimony of the witness. He made a recommendation that barriers be erected in the space between the crawlers. He made this rcommendation on the basis of his experience and on the basis of his investigation of this fatal accident and he made this recommendation to the mining company—not to the Defendant. He also included that recommendation in his report as follows: 'Openings between traveling crawlers where clear visual observation of high walls and spoil banks is obstructed by machine frame structure—adequate barriers should be maintained to prevent any possible overburden material from rolling through these openings and striking anyone passing or working under the machine.' * * *". Objection to the offer of proof was sustained by the trial court. Professor Ludwig expressed his opinion that the conditions of engress and egress were hazardous but was not asked his opinion concerning alternative methods of reducing or eliminating the hazardous conditions.

■■ We consider first the assignment of error relating to the exclusion of Jayne's opinion. According to *Miller v. Pillsbury Co.*, 33 Ill.2d 514, 211 N.E.2d 733, "* * * the trend is to permit expert testimony in matters which are complicated and outside the knowledge or understanding of the average person, and even as to matters of common knowledge and understanding where difficult of comprehension and explanation. The jury still may accept or reject such testimony." (See also, *Grismore v. Consolidated Products Co.*, 232 Iowa 328, 5 N.W.2d 646.) The trial court permitted experts to testify and the defendant on this appeal appears to concede that expert testimony is properly admissible both with respect to the hazardous or dangerous conditions and the alternatives which could have been employed to reduce the hazards or improve the safety of the product. (*Moren v. Samuel M. Langston Company*, 96 Ill.App.2d 133, 237 N.E.2d 759.) In the *Moren* case the court held that exclusion of the expert's opinion regarding safety devices which could have been installed was prejudicially erroneous and further held that an offer of proof need indicate only the substance of the proposed testimony. See also *Wallner v. Kitchens of Sara Lee, Inc.*, 419 F.2d 1028, in which the court approved testimony that employees could have been protected and injuries prevented by the installation of guards around a vertical conveyor. In *Pike v. Frank G. Hough Company*, 85 Cal.Rptr. 629, the court approved testimony of experts that rear view mirrors extending from each side of a paydozer could and should have been installed to reduce the hazard resulting from obscured rear view visability.

■■■ On this appeal defendant argues "The offer of proof shows only

that he intended to show that barriers in the form of tires and later in the form of chains, were in fact installed after the accident * * *." Such argument as well as a review of the record reveals that during the trial the defendant was quite apprehensive about the introduction of any evidence regarding the changes which had in fact been made to the machine and this apprehension apparently extended to any expressions of opinions regarding alternative designs. As indicated above Jayne was asked whether he had an opinion concerning methods which might reduce the hazards and the defendant's objection to the question was sustained. No reasons were suggested at the time nor is one indicated on this appeal why the question was improper and it would appear that whatever objection defendant might have had was premature so far as the particular question is concerned. Defendant's preoccupation with preventing any reference to the post occurrence changes seems to have obscured the real issue relating to the question, the answer it sought to elicit as well as the propriety of the opinion itself as disclosed by the offer of proof. We do not agree with defendant that the only purpose of the line of questioning was to elicit the fact of a post occurrence modification of the machine. The offer of proof does not even mention such a post occurrence modification but rather reveals that the witness at the time of his inspection of the machine formed an opinion concerning possible modifications of the machine which could have reduced the specific hazard resulting in the plaintiff's death. We do not agree with defendant that the report itself was not properly admissible but we are unable to see why the witness was not competent to express his opinions even though they may have been related to a recommendation which he made in his report. The offer of proof substantially discloses the witness would have testified to design alternatives which could and should have been installed at the time of manufacture of the machine. We believe the trial court erred in excluding Jayne's opinion and that as applied to the facts of this case such exclusion was so prejudicial that a new trial is required.

Proceeding to the next issue plaintiff argues the trial court erred in excluding evidence of post occurrence modifications of the machine. Such evidence (testimony and photographs) was objected to and excluded by the trial court's application of the rule that post occurrence changes are not admissible as admissions of negligence. (*Day v. Barber Coleman Co.,* 10 Ill.App.2d 494, 135 N.E.2d 231, *Mitchell v. Four States Mach. Co.,* 74 Ill.App.2d 59, 220 N.E.2d 109, *Garshon v. Aaron,* 330 Ill. App. 540, *Daggett v. Atchison, T.&S.F. R.R. Co.,* 48 Cal.2d 655, 313 P.2d 557, 64 A.L.R.2d 1283 & 29 Am.Jur.2d, Evidence, Sec. 275.) The rationale for the foregoing rule is usually said to be a matter of policy

which seeks to encourage improvements or precautions without subjecting the maker to possible liability. Inextricably interwoven with the rule is the usual observation that neither post occurrence changes nor alternative safer methods or designs are material or relevant to the issue of negligence. *Day v. Barber Coleman Co.*, 10 Ill.App.2d 494, 135 N.E.2d 231, 29 Am.Jur.2d, Evidence, Sec. 275.

If the rule excluding post occurrence changes depends upon policy considerations or theories of relevancy either of which may no longer be applicable to products liability cases then the question arises whether the exclusionary rule is applicable in such cases. As indicated in the earlier paragraphs of this opinion, evidence of alternative methods or designs are now deemed relevant and material even where defendant's liability depends on negligence. *Moren v. Samuel M. Langston Co.*, 96 Ill.App.2d 133, 237 N.E.2d 759. See also, *McCormack v. Hankscraft Co.* (Minn. 1967), 154 N.W.2d 488 & *Hartmann v. National Heater Co.* (Minn. 1953), 60 N.W.2d 804.

■■ In the development of product's liability principles design alternatives are appropriately considered whether reasonable care is the basis of liability or where liability is predicated upon strict tort liability. (*Pike v. Frank G. Hough Co.*, 85 Cal.Rptr. 629, 467 P.2d 229.) In both cases it appears that policy considerations are involved which shift the emphasis from the defendant manufacturer's conduct to the character of the product. Such change in emphasis furnishes additional reasons for permitting evidence of alternative designs in a strict tort liability case.

■■ The possible existence of alternative designs introduces the feature of feasibility since a manufacturer's product can hardly be faulted if safer alternatives are not feasible. In this connection feasibility includes not only the elements of economy, effectiveness and practicality but also the technological possibilities viewed in the present state of the art. If the feasibility of alternative designs may be shown by the opinions of experts or by the existence of safety devices on other products or in the design thereof we conclude that evidence of a post occurrence change is equally relevant and material in determining that a design alternative is feasible. (*Wallner v. Kitchens of Sara Lee, Inc.*, 419 F.2d 1028 and *Brown v. Quick Mix Co.* (Wash. 1969), 454 P.2d 205.) Accordingly it is our view that the evidence of post occurrence construction of the barriers is admissible and the trial court erred in holding to the contrary.

■■ The defendant appears to have anticipated the possibility that such evidence should have been admitted because it argues further that such evidence is admissible only if in support of prior expert opinion. We find no merit in this contention, the defendant having presented no

precedents in support thereof nor any rationale linking such evidence to the opinions of experts.

This brings us to plaintiff's last assignment of error namely the court's failure to give his issues instruction. Since this case must be retried we do not believe it necessary to discuss the propriety of the instruction since the issues relating thereto may not recur. This is particularly true because many of the reasons now urged by the defendant supporting the court's action relate to the form of the instruction and were not made in the trial court.

For the foregoing reasons the judgment of the Circuit Court of Peoria County is reversed and the cause remanded with directions that plaintiff be granted a new trial.

Reversed and remanded with directions.

SCOTT and DIXON, JJ., concur.