ROBERT KURZ, APPELLEE, v. DINKLAGE FEED YARD, INC., A NEBRASKA CORPORATION, APPELLANT.

286 N. W. 2d 257

Filed December 18, 1979. No. 42493.

Wright & Simmons, for appellant.

J. A. Lane and R. Kevin O'Donnell of McGinley, Lane, Mueller, Shanahan & McQuillan, for appellee.

Heard before BOSLAUGH, CLINTON, BRODKEY, and McCOWN, JJ., and ENDACOTT, District Judge.

BOSLAUGH, J.

The plaintiff, Robert Kurz, operates a dairy farm near Sidney, Nebraska. The defendant, Dinklage Feed Yard, Inc., operates a large commercial feedlot approximately 2½ miles northwest of the plaintiff's farm. On March 27, 1975, during a severe snowstorm and blizzard a large number of feeder cattle escaped from the defendant's feedlot and traveled to the Kurz farm where they broke down fences and sought shelter with the Kurz dairy cattle. In addition to damaging the fences at the Kurz farm, the defendant's cattle consumed and destroyed feed stored there and prevented the plaintiff from milking his cattle until March 29, 1975, when the defendant's cattle were removed from the plaintiff's farm. This action was brought to recover the damages caused by the defendant's cattle during and following the storm.

The amended petition alleged that the defendant was negligent in failing to erect fences that were sufficient to contain its cattle; in failing to erect windbreaks; in failing to exercise reasonable care and supervision of its cattle; and in failing to retrieve its cattle within a reasonable time. The answer alleged that any damage sustained by the plaintiff was caused by an act of God and the negligence of the plaintiff in failing to exercise reasonable care in the supervision of his cattle. The answer further al-

leged that the plaintiff failed to mitigate his damages by failing to round up his cattle within a reasonable time after the storm; in failing to obtain veterinary services for his cattle; and in failing to properly treat his cattle following the storm.

The issues were submitted to a jury which returned a verdict for the plaintiff in the amount of $18,496.10. The defendant has appealed and contends the trial court should not have submitted to the jury the specifications of negligence alleged in the amended petition.

The evidence shows that the fences which were erected at the defendant's feedlot were adequate to contain the feeder cattle under normal conditions, but during a heavy snowstorm the snow would drift around the fences, which permitted the cattle to escape over the top of the fences. There was evidence that this condition should have been anticipated and could have been avoided by constructing higher fences and erecting windbreaks and snow fences.

There was also evidence from which the jury could find that the defendant could have removed its cattle from the plaintiff's farm approximately 24 hours before they were actually removed. The evidence in regard to these matters was in conflict but it was sufficient to permit the jury to find that the defendant was negligent in the particulars alleged.

With respect to damages, the evidence shows that in addition to the damage to the plaintiff's fences and feed some of the plaintiff's cattle died and some of the wet cows developed mastitis, largely as a result of the plaintiff's inability to milk them while the defendant's feeder cattle were crowded in among them. The plaintiff attempted to treat these cattle but the treatment was not successful and it was necessary to dispose of them as meat animals. The evidence as to damages was somewhat in conflict but it was sufficient to permit the jury to return the verdict which it did.

The plaintiff was allowed to introduce evidence over objection that the defendant's cattle escaped from its lot during a 1977 storm and that sometime prior to trial the defendant erected snow fences at its lot. The evidence as to the escape of the cattle in 1977 had some relevance to the plaintiff's contention that storms of the magnitude of the 1975 blizzard were not unusual and should have been anticipated by the defendant.

Evidence in regard to the snow fences erected by the defendant after 1975 was admissible on the issue of the feasibility of snow fences as a precautionary measure. Under section 27-407, R. R. S. 1943, evidence of subsequent measures is admissible to show "feasibility of precautionary measures, if controverted."

The defendant's manager testified that snow fences would not have been effective to prevent the escape of the cattle and that such fences were dangerous and impractical. Feasibility as used in section 27-407, R. R. S. 1943, means more than capable of being done. It includes effectiveness and practicality. See, Sutkowski v. Universal Marion Corp., 5 Ill. App. 3d 313, 281 N. E. 2d 749; 35 C. J. S., Feasible, p. 964. Evidence that the defendant erected snow fences after the 1975 storm was admissible as tending to show that the testimony of the defendant's manager was untrue and that snow fences were feasible as a precautionary measure.

The plaintiff called a veterinarian as an expert witness who was allowed to testify by means of a lengthy hypothetical question that in his opinion the plaintiff's wet cows were suffering from mastitis after the March 27, 1975, storm. The defendant's objection that the question was too long and unintelligible was overruled.

The question was approximately 5 pages in length and included much of the evidence in the case, some of which was probably irrelevant. Under the new

rules of evidence such questions are unnecessary and should be avoided. However, the length and form of a hypothetical question is a matter within the discretion of the trial court. Kresha Constr. Co., Inc. v. Kresha, 184 Neb. 188, 166 N. W. 2d 589. As we view the record, the trial court did not abuse its discretion. The evidence objected to was to some extent cumulative and there was no prejudice to any substantial right of the plaintiff.

The defendant requested an instruction to the effect that the jury could consider evidence of the custom and approved methods of prudent operators in the same business in connection with all the other evidence in determining whether the defendant was negligent. The instruction was refused and the refusal is assigned as error.

The defendant's manager testified over objection that there was no customary height for feedlot fences but they ordinarily did not exceed 5 feet in height and the defendant's fences were equal to the custom in the industry. The issue, of course, was what was prudent for an operator under the particular circumstances in this case. Evidence as to what fences might be satisfactory in other locations had little or no relevance to the issue in this case. We think the requested instruction was properly refused.

The judgment of the District Court is affirmed.

AFFIRMED.