JOHN E. BALLWEG, Adm'r of the Estate of Donna Ballweg, Deceased, Plaintiff-Appellee, v. THE CITY OF SPRINGFIELD *et al.*, Defendants (The Coleman Company, Inc., *et al.*, Defendants and Third-Party Plaintiffs-Appellants, v. The City of Springfield *et al.*, Third-Party Defendants; Philip Henrici, Third-Party Defendant-Appellee).

Fourth District   No. 4—83—0836

Opinion filed December 13, 1984.—Supplemental opinion filed on denial of rehearing February 8, 1985.

John L. Swartz, of Giffin, Winning, Lindner, Newkirk, Cohen & Bodewes, P.C., and Grady E. Holley, of Holley, Keith & Mehlick, both of Springfield, for appellants.

Charles J. Gramlich and Eric A. Artman, both of Gramlich & Morse, of Springfield, for appellee Philip Henrici.

Londrigan, Potter & Randle, P.C., of Springfield, for appellee John E. Ballweg.

JUSTICE MILLS delivered the opinion of the court:
Hobie Cat II.

A new trial must take place.

A boating accident on Lake Springfield resulted in the electrocution deaths of Donna Ballweg and Jana Welch. The administrator of Ballweg's estate brought the present action against the manufacturer of the boat, Coast Catamaran Corporation (Coast), and Coast's parent company, the Coleman Company (Coleman).

Judgment was entered on a jury verdict in favor of Ballweg for $304,388.35 compensatory damages and $1,021,833 punitive damages. Coast and Coleman appeal.

The evidence relating to the circumstances of the accident was essentially the same as that set forth in *Ogg v. City of Springfield* (1984), 121 Ill. App. 3d 25, 458 N.E.2d 1331, a suit brought by the administrator of Jana Welch's estate against the city of Springfield (city) and Coleman. We recount the evidence here only to the extent necessary for our disposition.

Ballweg, Welch, and Philip Henrici were sailing a Hobie Cat catamaran on Lake Springfield near Springfield. Henrici manned the tiller and controlled the mainsail, while Welch operated the jib sail.

As the boat passed through a channel of the lake, its mainmast came into contact with an overhead power line spanning the channel. The rear end of the boat momentarily dipped and Henrici received an electrical shock when his legs became immersed in water. The boat began rocking, causing repeated contact between the mast and the power lines. Flames flashed from the mast and from beneath the boat. Ballweg and Welch jumped into the water and, as the mast contacted the power lines again, the two women went limp in the water and sank. Their bodies were subsequently recovered by divers. Henrici, who had remained on the boat, was rescued.

Because of errors in the admission of evidence we must reverse and remand for a new trial. We also shall address defendants' allegations of error respecting the damages, jury instructions, and pleadings in order to afford guidance to the trial court upon retrial.

I

Over defendants' objections, plaintiff introduced into evidence several charts listing accidents involving Hobie Cats and power lines over a 10-year period. The charts show the date of the accident, the State in which it occurred, and the number of resulting deaths and injuries. The injuries total 15 and the deaths total 21. There were two accidents with unknown injuries and deaths. The nature of each accident is not described other than by the charts' titles which state, "Hobie Cat Power Line Accidents." Defendants argue that this evidence should not have been introduced because plaintiff failed to show that the prior accidents were similar to the accident in the present case.

The supreme court held in *Rucker v. Norfolk & Western Ry. Co.* (1979), 77 Ill. 2d 434, 396 N.E.2d 534, that evidence of prior occurrences may be admissible to establish the dangerousness of a product. The prior accidents must, however, be "substantially similar" to the accident in question. *Rucker v. Norfolk & Western Ry. Co.* (1979), 77 Ill. 2d 434, 396 N.E.2d 534; *Moore v. Remington Arms Co.* (1981), 100 Ill. App. 3d 1102, 427 N.E.2d 608.

In the present case, plaintiff alleged that the Hobie Cat was unreasonably dangerous because of its design, which provided an electrical path from the power lines to the water, electrifying the water surrounding the boat. To admit evidence of prior accidents, plaintiffs were required to show that the injuries and deaths of the prior accidents were caused by a design defect substantially similar to that

alleged in the present case. No such showing was made, and, therefore, the introduction of the evidence of prior accidents was improper. Moreover, the nature of this evidence was sufficiently prejudicial to require reversal.

Defendants argue that, even if some of the prior accidents can be shown to be substantially similar to this case, plaintiff must also prove that defendants received notice of these accidents prior to Ballweg's accident. No authority is cited by defendants for this proposition. Illinois courts have only required, as a prerequisite to the admission of prior accidents, that they be substantially similar to the accident in question. See *Rucker v. Norfolk & Western Ry. Co.* (1979), 77 Ill. 2d 434, 396 N.E.2d 534; *Moore v. Remington Arms Co.* (1981), 100 Ill. App. 3d 1102, 427 N.E.2d 608.

## II

Over defendants' objections, plaintiff presented testimony that the city of Springfield (city) had taken precautionary measures with respect to the power lines crossing Lake Springfield which included placing warnings in the area of the lines and eventually running some of the lines under water. Defendants argue that this evidence was irrelevant and immaterial.

In support of the admission of this evidence, plaintiff cites *Sutkowski v. Universal Marion Corp.* (1972), 5 Ill. App. 3d 313, 281 N.E.2d 749, wherein the court held that, in a products liability case, evidence that a product has been changed after the occurrence of an accident is relevant and material in determining that an alternative design is feasible. *Sutkowski* is inapposite to the present case. Evidence of the city's remedial acts may have been relevant in a suit against the city, but it clearly has no relevance in determining an alternative design of defendants' Hobie Cat. Nor can we see the relevance of this evidence to any other issue in this case. The trial court's failure to sustain defendants' objections to this evidence was erroneous.

## III

Defendants next challenge the award of punitive damages, arguing that the pleadings provided no basis for the imposition of punitive damages.

Plaintiff's second amended complaint sought punitive damages only under the Survival Act (Ill. Rev. Stat. 1981, ch. 110½, par. 27—6). After the jury returned its verdict, plaintiff was allowed to amend his complaint to add counts for punitive damages under the Wrongful

Death Act (Ill. Rev. Stat. 1981, ch. 70, pars. 1, 2) and under a common law action for funeral and medical expenses.

Plaintiff concedes that he was not entitled to punitive damages under the Survival Act or the Wrongful Death Act. (See *Froud v. Celotex Corp.* (1983), 98 Ill. 2d 324, 456 N.E.2d 131; *National Bank v. Norfolk & Western Ry. Co.* (1978), 73 Ill. 2d 160, 383 N.E.2d 919; *Howe v. Clark Equipment Co.* (1982), 104 Ill. App. 3d 45, 432 N.E.2d 621; *Winter v. Schneider Tank Lines, Inc.* (1982), 107 Ill. App. 3d 767, 438 N.E.2d 462.) Plaintiff argues, however, that punitive damages could be awarded on his common law claim for medical and funeral expenses.

The supreme court has recognized a common law cause of action in which the spouse of the deceased or the estate's administrator may recover medical and funeral expenses which are not recoverable under the Wrongful Death Act. In *Saunders v. Schultz* (1960), 20 Ill. 2d 301, 170 N.E.2d 163, the court held that the decedent's spouse—who had become personally liable for funeral expenses under "An Act to revise the law in relation to husband and wife" (Ill. Rev. Stat. 1955, ch. 68, par. 15)—could bring an action individually at common law to recover pecuniary losses which were not recoverable under the Wrongful Death Act. By way of *dicta*, the court extended this cause of action to administrators as well, stating: "[W]e believe that the common law should be construed to permit the recovery of such funeral and medical expenses in an action either by the decedent's estate, or, as in the instant case where no such claim was made, by the surviving spouse." *Saunders v. Schultz* (1960), 20 Ill. 2d 301, 310, 170 N.E.2d 163, 168.

■ The injury which provides the basis for a *Saunders*-type action is derivative of the injury to the decedent. An analogous situation would be that of a spouse seeking medical expenses in a loss of consortium action. Although the spouse sues in his own name on his own behalf, the damages sued for are incurred through the injury to the other spouse. (See *Hammond v. North American Asbestos Corp.* (1982), 105 Ill. App. 3d 1033, 435 N.E.2d 540.) In the same manner, a spouse or administrator suing for medical or funeral expenses in a *Saunders*-type action is seeking damages incurred by an injury to the decedent. The supreme court has denied punitive damages in consortium actions on the theory that such actions are indirect or derivative in nature and recovery is intended only as compensation. (*Hammond v. North American Asbestos Corp.* (1983), 97 Ill. 2d 195, 454 N.E.2d 210.) For the same reason, we hold that punitive damages are not recoverable in a *Saunders*-type action for medical and funeral expenses.

## IV

■ Defendants next argue that the jury's $5,000 award for decedent's pain and suffering was against the manifest weight of the evidence because there was no evidence that decedent sustained any physical injury.

The only evidence cited by plaintiff in support of the award is testimony by Philip Henrici, wherein he stated: "[When the back of the boat went down] I received a shock, like a shock you get from putting your finger in a light socket. *** I looked at Jana and Donna, and they were both very surprised. Apparently, they had also been shocked."

Defendants stated that Henrici was shocked because, when the boat dipped, his legs were immersed in lake water which had become electrified, whereas decedent and Welch were at the other end of the boat and there was no evidence that they had touched the water or received a shock while on the boat.

We find that the testimony of Philip Henrici, standing alone, was insufficient to establish pain and suffering by the decedent. On remand, the jury shall not be instructed to consider pain and suffering as an element of damages.

## V

■ Defendants next argue that the trial court erred in instructing the jury with regard to decedent's lost earnings and loss of society.

The jury was given a damage instruction which stated in part:
"Where a decedent leaves parents the law recognizes the presumption that they sustained some substantial pecuniary loss by reason of the death. ***

In determining pecuniary loss to the parents and brothers and the weight to be given to the presumption of pecuniary loss to the parents, you may consider what benefits of pecuniary value, including money, goods, society, companionship and services the decedent might have been expected to contribute to the parents and brothers had the decedent lived."

Defendants acknowledge that plaintiff was entitled to an instruction of lost earnings and loss of society but argue that the instruction given was erroneous insofar as it contained *presumptions* of lost earnings and loss of society.

The supreme court in *Bullard v. Barnes* (1984), 102 Ill. 2d 505, 468 N.E.2d 1228, specifically abolished the presumption of lost earnings in wrongful death cases. In addition, the majority recognized loss

of society as an element of damages and held that there was a presumption of lost society where the decedent was a minor child. The majority stated, however, "This case does not present, and we therefore need not decide, the question of whether the loss-of-society presumption applies to children who have reached the age of majority." (*Bullard v. Barnes* (1984), 102 Ill. 2d 505, 517, 468 N.E.2d 1228, 1234.) In his special concurrence, Justice Clark stated that the loss of society presumption should apply to children who have reached the age of majority.

Because Donna Ballweg was not a minor at the time of the accident, we must decide whether a presumption of loss of society should pertain to cases where the defendant has reached the age of majority.

In *Bullard*, the supreme court defined "presumption" as "an inference which common sense draws from the known course of events." (102 Ill. 2d 505, 517, 468 N.E.2d 1228, 1234.) Because of the obvious disparity from family to family in the relationships between parents and their adult children, we find it reasonable to require a plaintiff to prove loss of society, where it exists, rather than to presume such a loss in all cases.

We conclude, therefore, that the jury should not have been instructed to presume either a loss of earnings or a loss of society.

## VI

■ Defendants next argue that the trial court erred in failing to instruct the jury with the second paragraph of Illinois Pattern Jury Instructions (IPI), Civil, No. 12.04 (2d ed. 1971). The instruction states in whole:

"More than one person may be to blame for causing an injury. If you decide that a [the] defendant[s] was [were] negligent and that his [their] negligence was a proximate cause of injury to the plaintiff, it is not a defense that some third person who is not a party to the suit may also have been to blame.

[However, if you decide that the sole proximate cause of injury to the plaintiff was the conduct of some person other than the defendant, then your verdict should be for the defendant.]"

The trial court gave the jury a modified version of IPI Civil No. 12.04 which omitted the second paragraph. Defendants had tendered a modified version of No. 12.04 which contained the second paragraph, but this instruction was not given. The notes on use to IPI Civil No. 12.04 state: "The second paragraph should be used only where there is evidence tending to show that the sole proximate cause of the occurrence was the conduct of a third person." (IPI Civil No.

12.04, at 75.) Defendants argue they raised as a defense that decedent's injury was proximately caused by the conduct of Henrici (who was piloting the boat when it struck the power lines), and the city (which maintained the power lines in a dangerous condition).

■ All that is required to justify the giving of an instruction is that there be some evidence in the record to justify the theory of the instruction. (*Lowe v. Norfolk & Western Ry. Co.* (1984), 124 Ill. App. 3d 80, 463 N.E.2d 792.) We believe there was some evidence in the record to support defendants' theory that the conduct of Henrici and the city was the sole proximate cause of decedent's death. The trial court erred in failing to instruct the jury with the second paragraph of IPI Civil No. 12.04.

## VII

■ Defendants next argue that the trial court erred in striking their defense based on decedent's contributory negligence. In their answer to plaintiff's amended complaint, defendants alleged:

> "*** that the Plaintiff's decedent, at the time and place alleged, was guilty of contributory negligence, which contributory negligence was a proximate cause of death and the ensuing damages claimed and that, in the event any judgment is entered against this Defendant, that said comparative fault should act to reduce any judgment in favor of the Plaintiff commensurate with the degree of fault attributable to Plaintiff's decedent."

In *Coney v. J.L.G. Industries, Inc.* (1983), 97 Ill. 2d 104, 454 N.E.2d 197, the supreme court held that the doctrines of misuse and assumption of the risk would no longer bar a plaintiff's recovery but that such misconduct would be compared in the apportionment of damages. A plaintiff's recovery would be reduced by the amount which the trier of fact found his misconduct contributed to cause the damages. The court stated, however, that a plaintiff's unobservant, inattentive, ignorant or awkward failure to discover or guard against a defect should not be compared as a damage-reducing factor. In applying *Coney*, the appellate court has held that a plaintiff's ordinary contributory negligence is not a damage-reducing factor in a strict liability action. *Simpson v. General Motors Corp.* (1983), 118 Ill. App. 3d 479, 455 N.E.2d 137; *Pell v. Victor J. Andrew High School* (1984), 123 Ill. App. 3d 423, 462 N.E.2d 858.

Defendants merely alleged that decedent was contributorily negligent and there was no allegation of fact amounting to misuse or assumption of the risk. Moreover, upon reviewing the record, we find no

evidence constituting misuse or assumption of the risk on decedent's part. Consequently, the dismissal of this portion of defendants' answer was not prejudicial to them.

## VIII

Finally, defendants argue that the trial court erred in dismissing their counterclaims against the city of Springfield and Philip Henrici. Both the city and Henrici had settled with the plaintiff. The counterclaims against them were dismissed pursuant to "An Act in relation to contribution among joint tortfeasors" (Contribution Act), which provides that a tortfeasor who obtains a settlement in good faith from the plaintiff is discharged from all liability for contribution to any other tortfeasor. (Ill. Rev. Stat. 1981, ch. 70, par. 302(c), (d); see *Lowe v. Norfolk & Western Ry. Co.* (1984), 124 Ill. App. 3d 80, 463 N.E.2d 792.) Defendants argue that the settlements were not made in good faith and, therefore, do not discharge the city or Henrici from liability for contribution.

### A. PLAINTIFF'S SETTLEMENT WITH THE CITY

The city obtained a covenant not to sue from the plaintiff for the sum of $37,500. Defendants argue that this sum illustrates the bad faith of the settlement because the city's liability to plaintiff was, according to defendants, much greater than this. Defendants state that in *Ogg* the jury awarded Welch's administrator $100,000 in compensatory damages. Defendants claim that the city's share of this judgment was $60,000, while theirs was $40,000. Defendants then conclude that the city's settlement with plaintiff for $37,500 was "substantially less than the amount for which the city was found responsible in the *Ogg* case."

The only authority cited by defendants which even remotely supports this type of analysis for determining good faith is *LeMaster v. Amsted Industries, Inc.* (1982), 110 Ill. App. 3d 729, 442 N.E.2d 1367. In *LeMaster,* the court stated that the ratio of the settlement to the final verdict was one measure of good faith. We adopt the rationale of *Lowe,* which rejected this type of test for the reason that "[i]t is virtually impossible to use an unknown factor, *i.e.,* the jury's verdict, to test good faith prior to trial." *Lowe v. Norfolk & Western Ry. Co.* (1984), 124 Ill. App. 3d 80, 94, 463 N.E.2d 792, 803.

Defendants' attempt to distinguish *Lowe* by arguing that they are not comparing the settlement in this case with an unknown factor—the verdict in this case—but rather with a known factor—the verdict in *Ogg.* We find such a comparison inapposite, for as was stated in

*Lowe*, albeit in a different context, "No case has a brother." (124 Ill. App. 3d 80, 119, 463 N.E.2d 792, 819.) Moreover, even if the verdict in *Ogg* were to be used as a basis for comparison, one would be hard pressed to conclude that a payment of $37,500 to settle a *potential* liability of $60,000 is evidence of bad faith.

The dismissal of the counterclaim against the city of Springfield is affirmed.

### B. PLAINTIFF'S SETTLEMENT WITH PHILIP HENRICI

■■■ Defendants argue that the settlement between plaintiff and Henrici was in bad faith because plaintiff's cause of action against Henrici was barred by the statute of limitations at the time the settlement was entered into. Henrici acknowledges that the statute of limitations had expired on plaintiff's claim against him. However, he maintains that the release settled a "potential outstanding liability" resulting from plaintiff's settlement with the city.

The covenant not to sue between plaintiff and the city contains an assignment of the city's contribution rights to plaintiff. Henrici apparently argues that his payment to plaintiff was in settlement of the city's contribution rights which were held by plaintiff. This argument fails, however, because any contribution rights which the city may have possessed *prior to* its settlement with plaintiff were lost once the city and plaintiff settled. Section 2(e) of the Contribution Act provides: "A tortfeasor who settles with a claimant pursuant to paragraph (c) *is not entitled to recover contribution from another tortfeasor whose liability is not extinguished by the settlement.*" (Emphasis added.) Ill. Rev. Stat. 1981, ch. 70, par. 302(e).

It appears, therefore, that plaintiff gave no consideration for his settlement with Henrici. The issue of consideration in settlements, as it bears upon good faith, was raised in *LeMaster* and we find the case instructive on that point. The plaintiff in *LeMaster* had given a release to his employer in return for a payment which exceeded the employer's liability under the Workers' Compensation Act (Ill. Rev. Stat. 1981, ch. 48, par. 138.1 *et seq.*). In addition, the employer agreed to waive its right to seek reimbursement for worker compensation payments previously made to plaintiff. The court stated:

> "[T]he settlement and release agreement between the plaintiff and [his employer] did not constitute a good-faith settlement because, effectively, the plaintiff had no rights outside of the Workers' Compensation Act which he could relinquish in return for the lien waiver and the cash payment. [Citation.] Between the plaintiff and [his employer], an equitable bargain was sim-

ply not entered into \*\*\*." *LeMaster v. Amsted Industries, Inc.* (1982), 110 Ill. App. 3d 729, 736, 442 N.E.2d 1367, 1373.

We agree with *LeMaster* insofar as it holds that a settlement lacking in consideration does not constitute a good faith settlement. Such an arrangement violates the two-fold purpose of the Contribution Act, which is (1) to encourage the settlement of *disputed* claims between the parties, and (2) to obtain an equitable sharing of the damages among those responsible for them. See *Lowe v. Norfolk & Western Ry. Co.* (1984), 124 Ill. App. 3d 80, 463 N.E.2d 792.

The dismissal of the contribution claim against Henrici is reversed.

*Affirmed in part, reversed in part and remanded.*

GREEN, P.J., and WEBBER, J., concur.

SUPPLEMENTAL OPINION ON DENIAL OF REHEARING

JUSTICE MILLS delivered the supplemental opinion of the court:

I

Ballweg has filed a petition for rehearing, arguing for the first time on appeal that the trial court erred in denying his motion for summary judgment on the grounds that defendants were collaterally estopped from denying liability because of the judgment in *Ogg*.

We are fully aware that Ballweg raised in his appellee's brief an estoppel argument relating to the trial court's ruling on a jury instruction. But, at no time prior to the filing of the petition for rehearing has Ballweg argued that a trial on the issue of liability was precluded because of collateral estoppel. The argument, therefore, is abandoned. See *First Granite City National Bank v. Champion* (1970), 130 Ill. App. 2d 970, 268 N.E.2d 35.

Moreover, we do not believe Ballweg is entitled to avail himself of collateral estoppel under the circumstances of the present case. Ballweg was not a party in *Ogg* and, therefore, collateral estoppel would not apply here under the traditional application of the doctrine. But see *Illinois State Chamber of Commerce v. Pollution Control Board* (1979), 78 Ill. 2d 1, 398 N.E.2d 9.

Ballweg's petition for rehearing is denied.

II

We are disturbed by Henrici's petition for rehearing. Our

original opinion was based on factual representations made by Henrici in his appellee's brief and undisputed by the parties. Henrici now claims that "[t]he able young lawyer who authored the brief of the Third Party Defendant Henrici was laboring under a misapprehension of the facts ***." The author of Henrici's petition for rehearing further claims that, although he reviewed the appellee's brief, he "did not catch the significance of the language describing the covenant as an assignment nor the language which distorted the way settlement actually occurred."

Henrici now asserts that the settlement described in his appellee's brief was never executed and that the actual covenant not to sue—between Ballweg, Henrici, and the city, dated June 27, 1983—contained no assignment of contribution rights from the city to Ballweg. Since the putative assignment had been the *only* basis for Henrici's argument that Ballweg provided consideration for the settlement with Henrici, it is singularly curious that the author of the petition for rehearing did not "catch the significance of the language describing the covenant as an assignment."

Nevertheless, we have allowed Henrici to supplement the record on appeal with the covenant not to sue between Ballweg, Henrici, and the city. As noted in the petition for rehearing, this settlement contains no assignment of contribution rights from the city to Ballweg. The covenant states on its face that the sole consideration provided by Ballweg to Henrici was Ballweg's promise to refrain from asserting any claim against Henrici under section 2 of the Wrongful Death Act (Ill. Rev. Stat. 1981, ch. 70, par. 2) arising out of the accidental death of Donna Ballweg on August 13, 1978.

This covenant not to sue was entered into *well after* the statute of limitations had run on any wrongful death action which Ballweg had against Henrici. We continue to hold, therefore, that a settlement which is entered into after the limitations period has expired on the plaintiff's claim against the settling defendant is not in good faith under section 2(c) of the Contribution Act (Ill. Rev. Stat. 1981, ch. 70, par. 302(c)).

Henrici's petition for rehearing is denied.

GREEN, P.J., and WEBBER, J., concur.