[No. G001295. Fourth Dist., Div. Three. July 22, 1986.]

EGIDIO MAGNANTE, Plaintiff and Respondent, v.
PETTIBONE-WOOD MANUFACTURING CO.,
Defendant and Appellant.

**[Opinion certified for partial publication.[1]]**

---

[1]Pursuant to California Rules of Court, rule 976(b), part III is not published, as it does not meet the standards for publication.

**COUNSEL**

Wayland, Riddle & Stroud and Michael T. Wayland for Defendant and Appellant.

Biren & Bruyneel and Thomas E. Bruyneel for Plaintiff and Respondent.

**OPINION**

**SONENSHINE, J.**—In this strict liability action we decide whether evidence of a postaccident design modification is admissible when made by a nonparty. We conclude it is and affirm.

I

Egidio Magnante, employed by the Lloyd Klein Company, was setting beams when a truss boom attachment disconnected from a high lift truck and struck him. Both the truck and the attachment had been manufactured by Pettibone-Wood Manufacturing Co. (Pettibone-Wood).

Magnante sued Pettibone-Wood on negligence and strict liability theories. At trial all three witnesses to the accident testified. Magnante and his coworker, Rhode, did not know how the accident had occurred. Blythe, the truck's operator, stated he had been lowering and releasing the boom. Within

a split second, it popped off the truck, turned and hit Magnante. Blythe knew at the time of the accident the boom should not strike anything because that could cause it to disengage. He testified the truss boom did not come into contact with any structure or object before the accident occurred.

Several years before the accident, the 20-foot boom had been fitted by Klein with a 6-foot extension for additional reach. Arthur Nichols, owner of a business which serviced and rented Pettibone-Wood Super 8 trucks, testified such extensions are generally not needed on a 20-foot truss boom. Furthermore, he would not allow such an extension on one of his rentals.

Klein, after the accident, made several modifications to the truss boom so it would not become disengaged. The company placed a gate with a pin behind the truss boom to push metal against its hook. It also installed safety chains. Pettibone-Wood was not told or consulted about these changes. At trial, Magnante was allowed to introduce evidence of these changes.

## II

■ Pettibone-Wood argues the trial court erred in allowing evidence of this postaccident modification made by a nonparty in this strict liability case. It alleges the evidence is barred by Evidence Code section 1151.[2]

But our Supreme Court in *Ault* v. *International Harvester Co.* (1974) 13 Cal.3d 113 [117 Cal.Rptr. 812, 528 P.2d 1148, 74 A.L.R.3d 986] determined "the language and the legislative history of section 1151 demonstrate that the section is designed for cases involving negligence or culpable conduct on the part of the defendant, rather than to those circumstances in which a manufacturer is alleged to be strictly liable for placing a defective product on the market." (*Id.*, at p. 117.)[3]

---

[2]All statutory references are to the Evidence Code unless otherwise specified.

Section 1151, in pertinent part, states: "When, after the occurrence of an event, remedial or precautionary measures are taken, which, if taken previously, would have tended to make the event less likely to occur, evidence of such subsequent measures is inadmissible to prove negligence or culpable conduct in connection with the event."

[3]In *Ault*, the plaintiff was injured in an accident involving a motor vehicle manufactured by the defendant. The plaintiff's strict liability action claimed the gear box on the vehicle was defective and had broken causing the auto to go out of control. At the trial, evidence established the defendant modified the gear box after the accident. As here the defendant asserted such evidence was barred by section 1151.

However, the Supreme Court reasoned section 1151 is inapplicable to causes of action based on strict liability. "Section 1151 by its own terms excludes evidence of subsequent remedial or precautionary measures only when such evidence is offered to prove negligence or culpable conduct. In an action based upon strict liability against a manufacturer, negligence or culpability is not a necessary ingredient. The plaintiff may recover if he establishes that the product was defective, and he need not show that the defendants breached a duty of due

Nevertheless, Pettibone-Wood argues *Ault* should be limited to cases where the postaccident modifications were made by the defendant. To hold otherwise, it suggests "would expose every manufacturer to a suit alleging design defect when someone else rigs up a post accident repair or modification . . ., irrespective of whether the originally intended design of the equipment is compromised or not."

But Pettibone-Wood misses the point. The evidence was introduced to show the product was defective. It was not offered to prove Pettibone-Wood's negligence. The parties disputed how the accident occurred. Pettibone-Wood insisted the boom would have had to have touched something in order to have disconnected. The driver maintained the boom did not come into contact with anything, and in fact, Magnante's witness testified once modified, the boom could in fact hit something and not disengage.

Nor was Pettibone-Wood prejudiced by the testimony. Once the evidence was in, Pettibone-Wood was quick to point out the alternate design did not work. Klein discontinued using the modification.

Recently our Supreme Court reiterated its conclusion in *Schelbauer* v. *Butler Manufacturing Co.* (1984) 35 Cal.3d 442 [198 Cal.Rptr. 155, 673 P.2d 743, 38 A.L.R.4th 566]. The court determined a postaccident warning alerting consumers to take safety precautions in using a product was admissible in a strict liability action against a manufacturer. The court again acknowledged "the exclusionary rule of section 1151 does not apply in strict liability cases." (*Id.*, at p. 449.)

But evidence of subsequent changes by a nonparty would be admissible even if our Supreme Court had not adopted the *Ault* exception to section

---

care. [Citation.]" (*Id.*, at p. 118.)

The *Ault* court acknowledged "Section 1151 rests explicitly on this 'public policy' rationale. In explaining the purpose of the section, the draftsmen's comment states: 'The admission of evidence of subsequent repairs *to prove negligence* would substantially discourage persons from making repairs after the occurrence of an accident.' (Italics added.) [Citations.] [¶] While the provisions of section 1151 may fulfill this anti-deterrent function in the typical negligence action, the provision plays no comparable role in the products liability field. [¶] When the context is transformed from a typical negligence setting to the modern products liability field, however, the 'public policy' assumptions justifying this evidentiary rule are no longer valid. In short, the purpose of section 1151 is not applicable to a strict liability case and hence its exclusionary rule should not be gratuitously extended to that field." (*Id.*, at pp. 119-120.)

1151.[4] There is no California case on point, but other jurisdictions have so held. Although often not allowing evidence of postaccident modifications made by the *defendant* in strict liability actions, other jurisdictions have permitted evidence of subsequent repairs by *third parties*. The court in *Denolf* v. *Frank L. Jursik Co.* (1975) 395 Mich. 661 [238 N.W.2d 1] considered in a "products liability case . . . whether the rule of evidence excluding proof of post occurrence modifications is applicable where the subsequent modification is made by a third person not a party to the litigation." (*Id.*, at p. 2.) The court explained "the rule [excluding such evidence] is defended in terms of relevancy and policy. Such evidence is said to be irrelevant because it is capable of explanations equally as plausible as an admission by conduct of pre-accident neglect of duty." (*Id.*, at p. 4.)

However, the court explained the evidence truly is relevant. "If relevancy were the only criteria, Professors Wigmore and McCormick both point out that such evidence would meet the usual standards of relevancy." (*Id.*, at p. 4, fns. omitted.) The evidence is excluded not on relevancy grounds: "The rule is primarily grounded in the policy that owners would be discouraged from attempting repairs that might prevent future injury if they feared that evidence of such acts could be introduced against them." (*Id.*, at p. 4.)

But as the court concluded, "[t]his policy consideration is absent in a case, such as this, where imposition of liability is not sought against the person taking the remedial action." (*Id.*, at p. 4, fn. omitted.)[5] We agree

---

[4]As a matter of fact, *Ault* relied in part upon *Sutkowski* v. *Universal Marion Corporation* (1972) 5 Ill.App.3d 313 [281 N.E.2d 749]. In *Sutkowski*, an Illinois appellate court found the trial court had erred in refusing to permit plaintiff's expert to express an opinion concerning alternative designs and their feasibility. This testimony included evidence the machine had been modified after the accident. (*Id.*, at p. 315 [281 N.E.2d 749, 750].) The court, citing *Pike* v. *Frank G. Hough Co.* (1970) 2 Cal.3d 465 [85 Cal.Rptr. 629, 467 P.2d 229], concluded "In the development of product's liability principles design alternatives are appropriately considered whether reasonable care is the basis of liability or where liability is predicated upon strict tort liability. [Citation.] In both cases it appears that policy considerations are involved which shift the emphasis from the defendant manufacturer's conduct to the character of the product. Such change in emphasis furnishes additional reasons for permitting evidence of alternative designs in a strict tort liability case." (*Sutkowski* v. *Universal Marion Corporation, supra,* 5 Ill.App.3d 313, 319, [281 N.E.2d 749, 753].)

Although it is unclear who made the subsequent modifications in *Sutkowski,* an inference may be drawn they were made by plaintiff's decedent's employer and not the defendant manufacturer. The opinion states the refused testimony included a recommendation barriers be erected in the space between the crawlers. This recommendation, based upon the expert's experience and on the basis of his investigation, was made to the mining company—not to the defendant.

[5]Recently, a Florida Court of Appeal in *Hartman* v. *Opelika Mach. & Welding Co.* (Fla.App. 1982) 414 So.2d 1105 (petn. den. 426 So.2d 27), adopted the reasoning of *Denolf* v. *Frank L. Jursik Co., supra,* 54 Mich.App. 584 [238 N.W.2d 1]. The *Hartman* court concluded "such evidence [is admissible] when the change is made by one not a party to the action, . . ." (*Hartman, supra,* at p. 1110.)

and hold the evidence was admissible. It was relevant and neither section 1151 nor any public policy of this state prohibited its admissibility.

### III*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

The judgment is affirmed. Respondent to recover costs on appeal.

Trotter, P. J., and Crosby, J., concurred.

*See footnote, *ante*, page 764.