[No. A040061. First Dist., Div. One. Nov. 2, 1989.]

GUY SANTILLI, Plaintiff and Respondent, v.
OTIS ELEVATOR COMPANY, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for partial publication. Those portions directed to be published follow.

COUNSEL

Robert M. Arbuthnot and Ericksen, Arbuthnot, Paynter & Brown for Defendant and Appellant.

Donald L. Galine and Brewer, Kleiman & Galine for Plaintiff and Respondent.

OPINION

STEIN, J.—Guy Santilli, employed by Children's Hospital, was in the habit of using a freight elevator to reach the hospital's parking lot. He was injured when the descending door of the elevator struck him on the shoulder as he was pushing the button which caused the door to descend. He brought the instant action against Otis Elevator Company, which had manufactured, installed and maintained the elevator, seeking damages for his injuries on theories of design defect and negligence. The jury returned a verdict finding no design defect in the elevator, but that Santilli's injuries had been caused by negligence. The jury found Santilli's damages to be $320,000, and further found that Otis was 60 percent, Santilli himself 30 percent, and Children's Hospital 10 percent responsible for Santilli's inju-

ries. Judgment was entered upon the jury's verdict awarding Santilli damages as against Otis Elevator in the amount of $183,212.50.[1]

Otis Elevator appeals from the judgment entered upon the jury's verdict and from the order denying its motion for a new trial . . . .* We shall affirm the judgment . . . .*

DISCUSSION

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .*

### THE TRIAL COURT DID NOT ERR BY GRANTING PLAINTIFF'S MOTION *IN LIMINE* EXCLUDING EVIDENCE OF POSTACCIDENT SAFETY MEASURES TAKEN BY CHILDREN'S HOSPITAL

In the present case Children's Hospital, not a party to the action,[2] allegedly posted some warnings or took other measures in an attempt to diminish the possibility of similar accidents in the future.  ■  Otis Elevator here contends that the trial court should have permitted it to introduce evidence of those remedial measures.

Evidence Code section 1151 (hereafter section 1151) limits the use at trial of evidence of remedial measures such as were taken by Children's Hospital, providing, "When, after the occurrence of an event, remedial or precautionary measures are taken, which, if taken previously, would have tended to make the event less likely to occur, evidence of such subsequent measures is inadmissible to prove negligence or culpable conduct in connection with the event." Otis Elevator, however, argues that the statute has no application to the present case because the statute is relevant only to actions sounding solely in negligence, whereas the present action included theories of strict liability.

As Otis Elevator argues, the rationale behind section 1151—to prevent discouragement of persons from making repairs after the occurrence of an accident (see Cal. Law Revision Com. coms. to § 1151)—has no application to a theory of strict liability. (*Ault* v. *International Harvester Co.* (1974) 13 Cal.3d 113, 119 [117 Cal.Rptr. 812, 528 P.2d 1148, 74 A.L.R.3d 986].)[3]

---

[1] Otis Elevator received a credit of $8,787.50 as a result of Santilli's earlier settlement of the action with other defendants.

* See footnote, *ante,* page 210.

[2] As Children's employee, Santilli's remedy against the hospital was limited by the workers' compensation laws. (Lab. Code, § 3601.)

[3] "While the provisions of section 1151 may fulfill this anti-deterrent function in the typical negligence action, the provision plays no comparable role in the products liability field. Historically, the common law rule codified in section 1151 was developed with reference to the usual negligence action, in which a pedestrian fell into a hole in a sidewalk . . . or a plaintiff

Accordingly, had the manufacturer of the elevator, Otis Elevator, taken the remedial measures at issue, evidence of those matters would not be precluded by section 1151. However, it was *not* Otis Elevator but Children's Hospital which took the measures. The question thus becomes whether the admission of the evidence would deter entities *such as Children's Hospital* from taking remedial measures. That the complaint against Otis Elevator included a theory of strict liability is irrelevant.

It does not appear that Children's Hospital could be held liable for Santilli's injuries on a theory of strict liability. Rather, the hospital's liability, if any, was predicated on its negligence in failing to instruct persons in the use of the elevator or in permitting persons to use it as a passenger elevator. It follows that evidence of the hospital's remedial measures was prohibited by section 1151.

Nor is the situation changed by the fact that Children's Hospital was Santilli's employer. The employer of an injured employee is entitled to a lien in "the total amount of compensation, damages for which [the employer] was liable including all salary, wage, pension, or other emolument paid to the employee," against a judgment in favor of the employee against a third party, such as Otis Elevator, resulting from the injury-producing occurrence. (Lab. Code, §§ 3852, 3856, subd. (b).) Where the employer's negligence is a cause of the injuries, its lien will be reduced by the percentage share of the employer's responsibility for the injuries. (*Rodgers* v. *Workers' Comp. Appeals Bd.* (1984) 36 Cal.3d 330, 335-336 [204 Cal.Rptr. 403, 682 P.2d 1068].) Thus, as occurred in the present case, a jury will be asked to determine the percentage of an employer's responsibility for the injury notwithstanding that the employer is not a party to the action. (See discussion, *id.,* at p. 335.)

A second argument advanced by Otis Elevator is that section 1151 does not apply where, as here, the entity which took the remedial actions was not

---

was injured on unstable stairs . . . ; in such circumstances, it may be realistic to assume that a landowner or potential defendant might be deterred from making repairs if such repairs could be used against him in determining liability for the initial accident.

"When the context is transformed from a typical negligence setting to the modern products liability field, however, the 'public policy' assumptions justifying this evidentiary rule are no longer valid. The contemporary corporate mass producer of goods, the normal products liability defendant, manufactures tens of thousands of units of goods; it is manifestly unrealistic to suggest that such a producer will forgo making improvements in its product, and risk innumerable additional lawsuits and the attendant adverse effect upon its public image, simply because evidence of adoption of such improvement may be admitted in an action founded on strict liability for recovery on an injury that preceded the improvement. In the products liability area, the exclusionary rule of section 1151 does not affect the primary conduct of the mass producer of goods, but serves merely as a shield against potential liability. In short, the purpose of section 1151 is not applicable to a strict liability case and hence its exclusionary rule should not be gratuitously extended to that field." (*Ault* v. *International Harvester Co., supra,* at pp. 119-120.)

a party. We see no reason to so limit section 1151. The rationale behind the statute extends equally to the situation in which a nonparty will be adversely affected by a jury's determination of its negligence. We therefore conclude that where, as here, a jury is asked to determine if a nonparty was negligent, and there is no strict liability theory asserted against that nonparty, and where the jury's determination will have a direct effect on the amount of damages which that entity will be required to pay, section 1151 precludes the use at trial of evidence of remedial measures taken by the nonparty.

We see no inconsistency between our opinion and that of the court in *Magnante* v. *Pettibone-Wood Manufacturing Co.* (1986) 183 Cal.App.3d 764 [228 Cal.Rptr. 420]. Although the court in that case permitted the use of evidence of remedial measures taken by the employer, the evidence was not introduced to demonstrate that the employer had any particular responsibility for the accident. Rather, it was introduced for the purposes of showing that the product at issue was defective. Here, the remedial measures were not relevant to the issue of the elevator's defectiveness, but only to the issue of whether its potential for injury might be reduced by some action taken by Children's Hospital. Moreover, the opinion in *Magnante* does not recite that the employee had obtained workers' compensation benefits from his employer, nor does it appear that the jury was asked to determine if the employer was negligent. Cases are not authority for propositions not there considered. (*Canales* v. *City of Alviso* (1970) 3 Cal.3d 118, 127-128, fn. 2 [89 Cal.Rptr. 601, 474 P.2d 417].)

Finally, even if we were to find that the court erred in refusing to permit Otis Elevator to introduce evidence of the remedial measures taken by Children's Hospital, we would hold such error harmless. The jury specifically found that the elevator was not defective. Accordingly, the only issue on which the evidence might properly have been admitted—the alleged defectiveness of the elevator—was resolved in Otis Elevator's favor.

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .*

---

* See footnote, *ante,* page 210.

The judgment is affirmed. . . .*

Racanelli, P. J., and Newsom, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 17, 1990.

---

* See footnote, *ante,* page 210.