NICHOLAS PALUMBO, Plaintiff-Appellant, v. HILDA KUIKEN, Defendant-Appellee.

First District (6th Division)   No. 1—89—1518

Opinion filed July 27, 1990.

Patrick E. Dwyer, of Patrick E. Dwyer & Associates, Ltd., of Chicago, for appellant.

Judge & Knight, Ltd., of Park Ridge (Charles C. Hoppe, Jr., Colleen H. Considine, and Janella L. Barbrow, of counsel), for appellee.

JUSTICE EGAN delivered the opinion of the court:

The plaintiff, Nicholas Palumbo, filed a personal injury action against the defendant, Hilda Kuiken, for damages allegedly sustained when the defendant's car collided with the rear end of the plaintiff's pickup truck on February 14, 1986. The jury returned a verdict in favor of the plaintiff and awarded the sum of $16,500 in damages. The trial judge denied the plaintiff's motion for a new trial on the issue of damages. The plaintiff contends that the judge committed reversible error in two evidentiary rulings.

On February 14, 1986, the plaintiff was working as a pipefitter in Hammond, Indiana. He was driving north on Torrence Avenue in his pickup truck around 5 p.m. As he approached the intersection of 176th Street and Torrence Avenue, he stopped behind a vehicle which was attempting to turn left.

The defendant was driving her son and his classmate home from school. She also was proceeding north on Torrence Avenue. She was driving 30 or 35 miles per hour when she first noticed the plaintiff's pickup truck. She never saw the plaintiff's brake lights or taillights illuminated.

Once she observed the plaintiff's truck, she slammed on her brakes very hard. She could not avoid the impact; only the force of the collision itself stopped her car. The front of her car went under the back of the truck, and then it bounced back off the truck.

The plaintiff testified that he felt the impact of the collision; it was very hard. The impact jolted him back and forward and all around. While his head went back at impact, it did not hit the back of the cab. He was shaken up immediately after the collision. Nevertheless, he "ran" over to the defendant's car and asked whether she was all right and whether anybody was hurt; the defendant was crying. She told him that his brake lights were not on.

The impact apparently knocked the plaintiff's rear bumper into the street; and the lower fender was bent. The impact also allegedly disconnected a wire or two from the back of the truck. The grille of the defendant's car was broken; part of the hood was crushed back toward the windshield; the headlights on the right side were broken; and the left directional signal was knocked out. The whole front end looked "like an accordion."

The plaintiff never told anyone at the scene of the accident that he was injured. He never complained to anybody about any pain or discomfort. The defendant testified that she saw him getting in and out of his truck and picking up the pieces that fell off his truck. He never told her that he had been jolted in the accident. The defendant

remained at the scene for about 45 minutes to one hour after the collision.

The plaintiff was able to drive his truck away from the scene. He testified that as he was driving home, he noticed that his neck and both shoulders were bothering him. They started to hurt, and he got a "tremendous headache." He spent a couple of hours at home and then had his wife drive him to Palos Community Hospital (Palos). Palos admitted him and gave him a neck brace, a muscle relaxer and a pain killer. However, the plaintiff did not complain of pain to both shoulders while at the hospital. A couple of X rays were taken, and he was sent home after four hours.

The plaintiff testified that the collision also fractured one of his upper front teeth which held his bridge in place.

Four days later the plaintiff visited his family orthopedic physician, Dr. Robert J. Atkenson. Atkenson testified that the plaintiff told him that he had been in an automobile accident at 176th Street and Torrence Avenue; the plaintiff complained of neck and left shoulder pain. However, a medical questionnaire which the plaintiff filled out for the doctor indicated that he had complained only of pain to the right side of his neck. It did not indicate any complaints about his left shoulder, his back, his right shoulder, headaches or his fractured tooth.

Dr. Atkenson's initial examination of the plaintiff's cervical spine on February 18, 1986, revealed a cervical scoliosis. The plaintiff's reflexes and motor neurological levels were basically normal. He had tenderness to palpation at the front of his left shoulder, and he exhibited objective signs of left shoulder pain. He also had a positive impingement sign which indicated that he suffered from an element of tendonitis or inflammation inside the left shoulder joint. A positive impingement sign can come and go. Dr. Atkenson testified that impingement syndrome was a degenerative condition, but that it was not always a degenerative process. He subsequently performed arthroscopic surgery on the plaintiff's left shoulder on November 7, 1986. During the surgery he found a tear in the glenoid labrum, which was the lip around the shoulder socket. It was the doctor's opinion that the injuries to the plaintiff's left shoulder were caused by the accident.

The condition of the plaintiff's shoulder improved significantly, but on December 4, 1986, the plaintiff complained of pain in his right shoulder. On December 26, the doctor performed an arthroscopic examination and surgery on the plaintiff's right shoulder. The medical findings on the right shoulder were basically the same as those on the

left shoulder, except for the glenoid labrum tear in the left shoulder. The cause of the pain in the right shoulder was a degenerative process which may have preexisted the accident. In the doctor's opinion, the accident did not cause any injury to the right shoulder. He had expressed the same opinion at his deposition.

The plaintiff filed answers to interrogatories in which he claimed injuries, lost wages and medical expenses unrelated to the rear-end collision of February 14. Specifically, he claimed the medical expenses associated with arthroscopic surgery for both of his shoulders and dental treatment for gum disease unrelated to the accident. Subsequently he filed answers to supplemental interrogatories in which he was asked to describe any personal injuries sustained by him as a result of the occurrence not previously disclosed in the original answers to interrogatories. He answered, "None, except treating doctor testified that one of my shoulders was not hurt in this collision." The plaintiff never withdrew his answers to either set of interrogatories. He never sought to amend the answers or to have them superseded in any way. Consequently, before trial, in a motion *in limine*, the defendant's attorney advised the trial judge that he intended to cross-examine the plaintiff using the plaintiff's previously filed answers to both sets of interrogatories which included claims of medical conditions and damages for injuries which were unrelated to the accident.

In response, the plaintiff's attorney advised the trial judge that the plaintiff was withdrawing any claim for injuries to his right shoulder and for the cost of dental treatment for gum disease. The plaintiff orally moved the court to bar the parties from mentioning any injuries which were unrelated to the collision. The trial judge ruled that he would permit the cross-examination; during the trial the plaintiff's attorney registered a continuing objection to any questioning which involved the unrelated and verbally withdrawn claims.

On cross-examination the plaintiff admitted that he had sworn to answers to interrogatories that his neck, back and both shoulders were injured because of the collision and that arthroscopic surgery to both shoulders resulted from his injuries. He admitted that he had claimed $2,180 in medical bills from Dr. Atkenson for surgery performed on the right shoulder but asserted that he had withdrawn this claim. Although he had also claimed $2,430 for dental work, he admitted that his fractured tooth and root canal did not cost $2,430. He admitted having claimed in the answers $2,327 in medical costs from St. Francis Hospital for services rendered in December 1986 for his right shoulder surgery but again asserted that he had withdrawn that claim. He said that he did not read his answers "to the letter of eve-

rything, but *** in basic form, [he] knew it." He thought that his right shoulder injury in the December surgery was related to the accident, but after further evaluation, he learned that it was not, and he so noted it. He also admitted that his claim for lost time included the period that he was off because of the right shoulder surgery.

The plaintiff contends that the court erred in permitting the cross-examination concerning his answers to interrogatories for two reasons: (1) his attorney expressly withdrew any claim for injuries to his right shoulder and for treatment for gum disease; and (2) because the answers to interrogatories constituted opinions to which the plaintiff was not qualified to testify.

Under our supreme court rules, answers to interrogatories may be used in evidence to the same extent as discovery depositions. (107 Ill. 2d R. 213 (f).) Thus, interrogatory answers may be used to impeach a witness in the same manner as any other inconsistent statement of a party. (107 Ill. 2d R. 212(a)(1); *Tower Oil & Technology Co. v. Buckley* (1981), 99 Ill. App. 3d 637, 425 N.E.2d 1060.) A party may use a witness' prior statement for impeachment as long as the statement is sufficiently inconsistent with the witness' trial testimony and relates to a material matter. (*O'Brien v. Walker* (1977), 49 Ill. App. 3d 940, 364 N.E.2d 533.) The trial court has discretion to determine whether evidence is relevant, and a reviewing court will not disturb a trial court's ruling in the absence of a clear abuse of that discretion. *Keller v. State Farm Insurance Co.* (1989), 180 Ill. App. 3d 539, 536 N.E.2d 194.

In this case, the plaintiff implicitly concedes that his answers were not true and that they were impeaching. It is his position, however, that because he withdrew the claim for those specific damages the use of false and impeaching answers should not have been used. If his argument is correct, then in any case where a party, before trial, disavows a previous statement, that previous statement may not be used. The unacceptability of the plaintiff's argument is obvious. Even in the case of withdrawn or superseded pleadings, those pleadings may be used for impeachment purposes. (*Winn v. Inman* (1983), 119 Ill. App. 3d 836, 457 N.E.2d 141; *Davis v. Freels* (7th Cir. 1978), 583 F.2d 337.) It should necessarily follow that so also may superseded or withdrawn answers to interrogatories be used for impeachment. Therefore, even if we were to concede that the answers had been withdrawn, their withdrawal would not bar their use for impeachment.

The plaintiff relies principally on *Blazina v. Blazina* (1976), 42 Ill. App. 3d 159, 356 N.E.2d 164. That case is not in point. The petitioner

in that case filed a divorce action which, in part, sought the sale of his jointly owned marital home. The respondent counterclaimed; she did not seek the sale or partition of the home. Immediately before the introduction of evidence, the court permitted the petitioner to withdraw his complaint, and the case was tried on the respondent's counterclaim alone. The trial court ordered the sale of the marital home. The appellate court ruled that the trial court abused its discretion in ordering the sale of the home because the petitioner's complaint had been withdrawn before evidence was heard. That case involved a claim for relief which was no longer before the court, not a statement of fact.

The same distinction exists between this case and another case cited by the plaintiff, *Guebard v. Jabaay* (1983), 117 Ill. App. 3d 1, 452 N.E.2d 751. In *Guebard*, the appellate court held that by withdrawing certain counts of the complaint, the plaintiff was barred from seeking recovery on a particular theory.

■ The plaintiff also contends that the answers were improperly introduced because they constituted opinions to which the plaintiff could not testify. That same argument was made and rejected in *People v. Edwards* (1973), 55 Ill. 2d 25, 302 N.E.2d 306, and *Campen v. Executive House Hotel, Inc.* (1982), 105 Ill. App. 3d 576, 434 N.E.2d 511. (See also *Taylor v. Manhattan Township Park District* (1985), 138 Ill. App. 3d 23, 485 N.E.2d 399.) We conclude, therefore, that no error was committed by the use of the plaintiff's answers to interrogatories.

The plaintiff next claims that the trial judge committed reversible error because he refused to admit into evidence a videotape of the plaintiff's arthroscopic surgery and because the judge refused an *in camera* inspection of the videotape before determining its admissibility, thus depriving the plaintiff the opportunity to make an offer of proof.

■ ■ The decision to admit videotapes into evidence is solely within the discretion of the trial judge. (See *Missouri Portland Cement Co. v. United Cement, Lime, Gypsum & Allied Workers International Union, Division of Boilermakers, AFL-CIO, Local No. 438* (1986), 145 Ill. App. 3d 1023, 496 N.E.2d 489; *Lawson v. Belt Ry. Co.* (1975), 34 Ill. App. 3d 7, 339 N.E.2d 381.) A videotape may be admissible as long as it has a reasonable tendency to prove some material fact in issue and its probative value is not outweighed by its prejudicial effect. *Georgacopoulos v. University of Chicago Hospitals & Clinics* (1987), 152 Ill. App. 3d 596, 504 N.E.2d 830.

■ We agree with the judge's conclusion that the videotape

would have added nothing to the plaintiff's case to which Dr. Atkenson could not and did not testify. Dr. Atkenson testified in considerable detail about the precise nature and extent of the plaintiff's injury as well as about the surgical procedure itself. Thus, viewing a videotape with little or no probative value would have wasted judicial time to present cumulative evidence which need not be admitted. (See *Simmons v. City of Chicago* (1983), 118 Ill. App. 3d 676, 455 N.E.2d 232.) We cannot say, therefore, that the judge abused his discretion.

Since we have concluded that no error was committed in the refusal to admit the videotape, any discussion of whether the judge committed error in preventing the plaintiff from making an offer of proof because he refused to view the videotape before ruling would be academic. In any event, the record shows that the trial judge was well informed of the nature of the proffered videotape, how the evidence would be presented and for what purpose it would be introduced. *People v. Lynch* (1984), 104 Ill. 2d 194, 470 N.E.2d 1018.

For these reasons, the judgment of the circuit court is affirmed.

Judgment affirmed.

McNAMARA and RAKOWSKI, JJ., concur.