JAMES DILLARD, Plaintiff-Appellee, v. WALSH PRESS AND DIE COMPANY, Defendant-Appellant.

First District (5th Division)   No. 1—89—2817

Opinion filed December 27, 1991.

---

Williams & Montgomery, Ltd., of Chicago (James K. Horstman, Barry L. Kroll, Mark A. Miller, and Lloyd E. Williams, Jr., of counsel), for appellant.

Robert A. Rosin & Associates, Ltd., of Chicago (Robert A. Rosin, of counsel), for appellee.

JUSTICE MURRAY delivered the opinion of the court:

Plaintiff, James Dillard, filed a strict products liability action against defendant, Walsh Press & Die Company, after he was injured while operating a punch press which defendant manufactured. After a jury trial, a verdict was returned in plaintiff's favor, and defendant now appeals raising the following issues: (1) whether it was an abuse of discretion to exclude certain testimony at trial; (2) whether it was an abuse of discretion to allow evidence of prior similar occurrences; (3) whether it was reversible error to change a ruling previously allowing defendant's jury instruction after defendant's closing argu-

ment; and (4) whether the jury's verdict was against the manifest weight of the evidence. For the following reasons, we affirm.

Plaintiff, an employee of Punch Products Company (Punch Products), sustained injuries to both hands while operating a punch press on March 21, 1977. He filed a products liability complaint against defendant, the manufacturer of the press, alleging that it was unreasonably dangerous. The following testimony was presented during a jury trial.

Plaintiff testified that at the time of the accident, he was operating the punch press with the hand levers. The press was also equipped with a foot pedal but it was disconnected at that time. The foot pedal was not moving while plaintiff was using the press. Plaintiff inserted a sheet of plastic into the press and pushed the hand levers down, which signaled the ram of the press to descend and stamp the sheet. When the ram was ascending to its rest position at the top of the press, he took the plastic sheet from the press, turned it around and inserted it into the press again. He signaled the press to begin another stroke. After the ram stamped the sheet and while the ram was ascending to its rest position, plaintiff released the hand levers and put his hands into the press to retrieve the sheet. The ram then descended on his hands, causing serious injury.

On cross-examination, plaintiff stated that the ram stopped at the top of the press before the accident. When defendant again asked whether the ram stopped just before the accident, plaintiff stated that the ram did not stop. Plaintiff admitted that in his deposition he testified that the ram stopped before he was injured. On redirect, plaintiff admitted that in his deposition he also stated that from the time the ram rose to the top of the press and descended on his hands it was a split second. Defendant agreed with the trial judge that plaintiff had the right to use the deposition on redirect to clarify plaintiff's testimony.

Walter L. Seligman, former president of Punch Products, testified that Punch Products purchased the press from defendant in 1959. At that time, defendant knew that Punch Products only had single-stroke presses and that the new press would be used in a single-stroke operation. Defendant recommended the press in question based on Punch Products' needs.

When purchased, the press was equipped with a foot pedal and, on defendant's recommendation, Punch Products subsequently added the hand levers. Defendant inspected the press at Punch Products after it installed the hand controls to check whether it was operating properly. Punch Products used the press with a variety of different

dies to stamp shapes into nonmetallic material. Seligman testified that Punch Products alternated the connection of the hand levers and the foot pedal depending on the job being performed. When the hand levers were connected, the foot pedal was disconnected, and when the foot pedal was connected, the hand levers were disconnected. However, the press was never operated with both controls connected at the same time.

After plaintiff was injured and taken to the hospital, Seligman tested the press and found it was operating properly. Only the hand levers were connected at that time. He then assigned another employee to operate the press. Punch Products continued to use the press and alternated the connections between the hand levers and foot pedal.

Seligman testified that one month after the accident, Jerome Heyda, defendant's president, inspected the press at Punch Products. Nothing had been changed on the press since the accident except that connections of the hand levers and foot pedal were alternated. On cross-examination, Seligman was questioned about his deposition testimony where he stated that there were no changes to the controls or parts on the press after the accident until Heyda inspected it one month later. Seligman explained that he thought the question at the deposition involved changes to a mechanical device such as a clutch assembly.

Outside the presence of the jury, plaintiff informed the trial judge and defendant that he would present evidence of prior similar occurrences. Plaintiff relied on the testimony of Heyda, defendant's president, in a previous case against defendant where Heyda admitted that there were several other cases which involved similar occurrences. Defendant argued that the testimony was based only on allegations in complaints and that the testimony was taken out of context. The judge, acknowledging that under applicable law evidence of prior occurrences was admissible if they were substantially similar, allowed plaintiff to present the evidence.

Plaintiff called Heyda as an adverse witness in his case in chief. Heyda testified that the press would continuously operate if pressure was kept on the controls. The press was not equipped with an anti-repeat device which would have prevented it from continuing into a second stroke if the operator inadvertently kept pressure on either the hand or foot controls too long. Also, the press did not have a guard over the foot pedal, but it required 78 pounds of pressure to activate. Heyda admitted that at the time the press was manufactured, it was reasonably foreseeable that the press would be used in a

single-stroke operation. It was also known that operators would place their hands in the press when it was fed manually.

Heyda testified that although defendant's presses were manufactured in different sizes, they operated in the same manner as the press in question. When plaintiff asked Heyda about prior similar occurrences, defendant objected, stating, "I object to this line of questioning based on allegation[s] in plaintiff's complaints as set forth in our prior conversation." The judge overruled the objection, and Heyda testified that prior to plaintiff's accident he was aware that other operators of defendant's presses, which were not equipped with anti-repeat devices, alleged they were injured when the press continued into a second stroke.

Plaintiff's engineering expert, Ronald Lobodzinski, testified that because the press had a full revolution clutch, it would complete a full stroke when the controls were activated. When signaled, the ram would descend approximately $3\frac{1}{2}$ inches onto the bed, rise again, and stop. One stroke of the press was completed in seven-tenths of a second. To start another stroke, the operator would have to signal the press again through the controls.

Lobodzinski testified that the press was not manufactured with an anti-repeat device and without such a device, the press would continuously operate if the operator kept pressure on the controls. An anti-repeat device would have prevented the press from continuing to a second stroke if the operator inadvertently kept pressure on the controls for too long. An anti-repeat device was required under applicable industry standards. Lobodzinski also testified that it was reasonably foreseeable that the press would be used in a single-stroke operation, as Punch Products used it.

In Lobodzinski's opinion, plaintiff was injured because he kept pressure on the controls for a fraction of a second too long which signaled the press to start a second stroke. Lobodzinski testified that because the press had a full revolution clutch and did not have an anti-repeat device, it was unreasonably dangerous. He testified that the proximate cause of plaintiff's injury was the absence of an anti-repeat device on the press.

Lobodzinski also testified that if both the hand levers and foot pedal were connected when plaintiff was operating the press, the foot pedal would have been moving during the operation. If both controls were connected and plaintiff accidentally activated the foot pedal, as defendant contended, the press was unreasonably dangerous because it did not have a guard on the pedal.

Plaintiff rested his case and defendant presented the following testimony.

Jerome Heyda, defendant's president, testified that the press was a continuous-stroke press but, at the time the press was manufactured, it was foreseeable that it would be used in a single-stroke operation, as Punch Products used it.

Ralph Barnett, defendant's engineering expert, testified that the press was designed for use in a continuous-stroke operation. Under industry standards applicable at the time the press was manufactured, an anti-repeat device was recommended, but not required, for a continuous-stroke press. Because the press was not equipped with an anti-repeat device, it was not reasonably foreseeable that it would be used in a single-stroke operation. Without an anti-repeat device, the press was unreasonably dangerous for use in a single-stroke operation.

Barnett testified that the installation of hand levers on the press was foreseeable; however, it was not foreseeable that the hand and foot levers would be connected at the same time. The press should have been operated only through either the hand levers or the foot pedal. Barnett also testified that the foot pedal was reasonably safe for its intended use, although it did not have a guard, because of the amount of pressure required to activate it and its position on the press.

Barnett testified that, in his opinion, plaintiff accidentally activated the foot pedal when both the hand levers and the foot pedal were connected at the same time, which signaled the ram of the press to descend. It was also possible, although unlikely, that plaintiff signaled the press through the hand levers to start a second stroke and then inadvertently put his hands in the press before the ram descended. It was unlikely because of the speed required to "beat the ram" and put his hands in the press. If the ram stopped at the top of the press before it descended on plaintiff's hands, plaintiff did not signal the press inadvertently by keeping pressure on the hand levers. In that event, an anti-repeat device would not have prevented plaintiff's injury. Barnett also acknowledged that the accident could have been caused if plaintiff held the hand levers down too long, signaling a second stroke.

During trial, defendant was precluded from introducing certain testimony. Defendant was not allowed to present Heyda's testimony of his observation of the press one month after the accident. Heyda testified in an offer of proof that approximately one month after the accident, he examined the press at Punch Products and Seligman told

him it was in the "same condition" as the day of the accident. Heyda observed that both the hand levers and the foot pedal were connected at the same time and, as a result, either could be used to activate the press.

Defendant was also not allowed to present testimony that Punch Products failed to adequately guard the press. In offers of proof, both Heyda and Barnett testified that because the press was multifunctional, it was Punch Products' responsibility, rather than defendant's, to install guards at the point of operation on the press according to how the press would be used. Defendant could not guard the press because it did not know how the press would be used and Punch Products' failure to guard the press caused plaintiff's injury.

In the jury instruction conference held before closing arguments, defendant offered a modified version of Illinois Pattern Jury Instructions, Civil, No. 12.04 (3d ed. 1991) (hereinafter IPI Civil 3d No. 12.04). Defendant told the judge that the appellate court approved the instruction for a products liability case in *Ballweg v. City of Springfield* (1984), 130 Ill. App. 3d 241, 473 N.E.2d 342, *aff'd in part, rev'd in part* (1986), 114 Ill. 2d 107, 499 N.E.2d 1373. Defendant did not inform the judge that the case was appealed to the supreme court. Defendant adapted IPI Civil 3d No. 12.04, which is a negligence instruction, for use in a strict products liability case. Defendant included the second paragraph of the instruction, which stated that if the jury found that another person's conduct was the sole proximate cause of plaintiff's accident, then it should find in favor of defendant. The trial judge, overruling plaintiff's objection, allowed the instruction.

Defendant referred to the instruction twice in its closing argument. Immediately after defendant's closing argument, plaintiff requested that the judge reconsider his ruling in allowing the instruction. In discussing whether the instruction should be given, the judge asked defendant whether *Ballweg* was cite checked. Defendant represented that *Ballweg* was "good law." The judge continued to ask whether the case was cite checked and defendant then stated that *Ballweg* was appealed to the supreme court and was affirmed. The judge read the supreme court's opinion in *Ballweg* and learned that it reversed the appellate court's ruling that there was some evidence presented to support giving the instruction with the second paragraph. The judge sustained plaintiff's objection and disallowed the instruction.

Defendant moved for a mistrial, arguing it was prejudiced because it referred to the instruction in closing argument and asserted that it

informed the judge of the supreme court's opinion in *Ballweg* by citing it in a previously filed memorandum of law. The motion for mistrial was denied. Defendant then moved that there be no comment made to the jury that the instruction referred to in its closing argument would not be given. Plaintiff agreed not to comment.

The jury returned a verdict for plaintiff and against defendant awarding $770,985 in damages. Defendant now appeals.

OPINION

I

Defendant first argues that the judge abused his discretion when he excluded certain testimony during trial. The admission of evidence at trial rests within the discretion of the judge and will not be reversed on appeal absent an abuse of discretion. *Palumbo v. Kuiken* (1990), 201 Ill. App. 3d 785, 559 N.E.2d 206.

At trial, defendant was not allowed to introduce Heyda's testimony that he inspected the press one month after the accident and observed that both the hand and foot controls were connected at that time, nor was he allowed to present evidence that Seligman told Heyda that the press was in the same condition as the day of the accident.

Defendant argues that this testimony should have been admitted because it supported its theory that plaintiff signaled the press to start another stroke by accidentally stepping on the foot pedal. This testimony would have established that plaintiff's conduct was the sole proximate cause of his injury.

Defendant contends such testimony was relevant, relying on *Sanchez v. Black Brothers Co.* (1981), 98 Ill. App. 3d 264, 423 N.E.2d 1309, *Stanfield v. Medalist Industries, Inc.* (1975), 34 Ill. App. 3d 635, 340 N.E.2d 276, and *Santiago v. Package Machinery Co.* (1970), 123 Ill. App. 2d 305, 260 N.E.2d 89. Each of these cases held that a defendant in a products liability case may present evidence at trial as to how the product was being used at the time of the injury to support its defense that plaintiff's conduct was the sole proximate cause of the injury.

These cases, however, do not support defendant's argument that Heyda's observation of the press one month after the accident was relevant to determine how the accident occurred or how plaintiff was using the press at the time of the accident. Heyda testified in an offer of proof that Seligman told him that the press was in the "same condition" as the day of the accident. However, Seligman testified at

trial that immediately after the accident, Punch Products continued to use the press and alternated the connections of the hand and foot controls depending on the job being performed. The evidence showed, and defendant does not dispute, that the connections of the press were changed continuously from the time of the accident until Heyda saw it one month later. Therefore, Heyda's testimony concerning the connections of the controls one month after the accident was not probative of the proximate cause of the accident. The trial judge did not abuse his discretion in excluding it.

Defendant also complains that the trial judge excluded evidence that the sole proximate cause of plaintiff's injury was Punch Products' failure to install guards at the point of operation on the press. In offers of proof, both Heyda and Barnett testified that because the press was multifunctional, it was Punch Products' responsibility, rather than defendant's, to install guards on the press according to how the press would be used.

■ A manufacturer has a duty to produce a reasonably safe product which cannot be delegated to the user or purchaser of the product. (*Doser v. Savage Manufacturing & Sales, Inc.* (1990), 142 Ill. 2d 176, 568 N.E.2d 814.) That duty is not obviated when the manufacturer puts a multifunctional machine into the stream of commerce. *Scott v. Dreis & Krump Manufacturing Co.* (1975), 26 Ill. App. 3d 971, 326 N.E.2d 74.

■ In *Scott*, plaintiff was injured when the ram of a press brake descended on his hand after he had turned off the power and accidentally stepped on the foot pedal. Evidence was presented that the flywheel of the press would continue in motion for a short period of time after the press was turned off which could cause the ram to move. A lock-out device would have prevented the press from operating after it was turned off. The trial judge excluded evidence offered by the manufacturer that because the press was multifunctional, the employer who purchased the press had the sole responsibility to install safety devices at the point of operation. On appeal from a jury verdict in plaintiff's favor, the court stated that the jury could have found that the press was unreasonably dangerous without the lock-out device, which was unrelated to its multifunctional character. It found that exclusion of the manufacturer's evidence was proper and stated:

> "To allow such evidence in circumstances where the appropriate safety devices have not been provided to the purchaser would inject into the case an improper conclusion of law so far as the issues of strict liability are concerned. [Citations.] The evidence here was not relevant to the issue of whether the

press was unreasonably dangerous and improperly sought to delegate the duty of the manufacturer to the conduct of a third party." *Scott*, 26 Ill. App. 3d at 988, 326 N.E.2d at 85.

Similarly here, the absence of an anti-repeat device was not related to the multifunctional nature of the press. Introduction of the evidence defendant offered would have been an attempt to delegate its duty to Punch Products. As a result, the exclusion of the evidence was not an abuse of discretion.

## II

Defendant next argues the trial judge abused his discretion when he allowed testimony of prior occurrences without a foundation of similarity.

■ Evidence of prior occurrences is admissible in a trial for products liability if the trial judge, in the exercise of his discretion, determines that the prior occurrences were substantially similar to the case at bar. *Rucker v. Norfolk & Western Ry. Co.* (1979), 77 Ill. 2d 434, 396 N.E.2d 534.

■ In this case, plaintiff relied on Heyda's trial testimony in another case against defendant where he admitted that there were several other cases which involved similar occurrences. Defendant asserted it was based on allegations in complaints. Although the judge did not expressly state that he found the prior occurrences were similar, he allowed the testimony, recognizing that prior occurrences were admissible if they were substantially similar. Defendant's objection to the testimony during trial was not specifically based on the lack of foundation. Heyda testified that defendant's presses operated in the same manner as the press in question and that he was aware of allegations that other operators of defendant's presses were injured when the press continued into a second stroke and the press was not equipped with an anti-repeat device. Under these circumstances, the trial judge did not abuse his discretion in admitting the testimony.

## III

Defendant also argues that the trial judge committed reversible error when he changed his previous ruling and disallowed one of its jury instructions after defendant referred to the instruction in closing argument.

Prior to closing arguments, "[t]he court shall hold a conference with counsel to settle the instructions and shall inform counsel of the court's proposed action." (Ill. Rev. Stat. 1989, ch. 110, par. 2–1107(c).) The trial judge has discretion in determining which instruc-

tions should be tendered to the jury and refusal to tender an instruction is not an abuse of discretion unless prejudice has resulted. *Ferry v. Checker Taxi Co.* (1987), 165 Ill. App. 3d 744, 520 N.E.2d 733.

■ In this case, during the jury instruction conference defendant represented that IPI Civil 3d No. 12.04 was supported by the appellate court opinion in *Ballweg* (130 Ill. App. 3d 241, 473 N.E.2d 342, *aff'd in part, rev'd in part*, 114 Ill. 2d 107, 499 N.E.2d 1373), but did not inform the judge that it was appealed to the supreme court and was reversed, in part, on that point. Even in the subsequent argument on the issue after defendant's closing argument, defendant represented to the judge that the supreme court affirmed *Ballweg*. In light of these omissions or misrepresentations, whether intentional or inadvertent, defendant cannot complain now that it was prejudiced when it caused the alleged error. Although defendant now argues that the judge "took absolutely no measures to correct the misapprehension which had been thrust upon the jury by [his] late change of heart," defendant specifically requested that no comment be made to the jury regarding the fact that the instruction would not be given. Defendant did not request the judge to give an explanation to the jury.

Additionally, defendant argues that the judge erred in denying the instruction, relying on *Dugan v. Sears, Roebuck & Co.* (1983), 113 Ill. App. 3d 740, 454 N.E.2d 64, which defendant stated was an example of a products liability case where the instruction was properly given. However, the court in *Dugan* did not consider whether the instruction was proper. Further, the second paragraph of the instruction should only be given if there was some evidence presented at trial that another's conduct was the sole proximate cause of the accident. (Illinois Pattern Jury Instructions, Civil, No. 12.04, Notes on Use (3d ed. 1991).) Defendant claims there was evidence presented that both the hand and foot controls on the press were connected at the time of the accident which was the sole proximate cause of plaintiff's injury. However, the only evidence presented on the point was plaintiff's and Seligman's testimony that only the hand levers were connected at the time of the accident. As a result, the judge did not abuse his discretion in disallowing the instruction.

## IV

Lastly, defendant argues that the jury's verdict was against the manifest weight of the evidence.

In an action against a manufacturer for strict products liability, plaintiff must show that an unreasonably dangerous condition of the

product caused his injury and that the condition existed at the time it left the manufacturer's control. (*Doser*, 142 Ill. 2d 176, 568 N.E.2d 814.) It is the jury's function to determine the credibility of the witnesses and to resolve conflicting testimony; its verdict will not be reversed on appeal unless it was against the manifest weight of the evidence. *Walker v. Midwest Emery Freight Systems, Inc.* (1990), 200 Ill. App. 3d 790, 558 N.E.2d 470.

■ In this case, the evidence at trial supported the jury's verdict. Plaintiff testified that when he was using the press, only the hand levers were connected. After releasing the hand levers, the ram descended on his hands. Seligman, Punch Product's former president, testified that only the hand levers were connected at the time of the accident. He also testified that defendant knew Punch Products would use the press in a single-stroke operation.

Both Lobodzinski, plaintiff's expert, and Heyda, defendant's president, testified that it was reasonably foreseeable that the press, which was a continuous-stroke type, would be used in a single-stroke operation as Punch Products used it. Heyda acknowledged that an anti-repeat device would have prevented the press from continuing into a second stroke if the operator inadvertently kept pressure on the controls too long. Lobodzinski testified that, in his opinion, plaintiff's accident was caused by inadvertently keeping pressure on the controls too long and the proximate cause of the accident was the absence of an anti-repeat device. He also testified that without an anti-repeat device the press was unreasonably dangerous. Even Barnett, defendant's expert, acknowledged that the use of a continuous-stroke press in a single-stroke operation without an anti-repeat device was unreasonably dangerous.

Conflicting evidence was also presented at trial. Defendant relies on plaintiff's deposition testimony that the ram of the press stopped before it descended on his hands. If the jury believed this testimony, it would have found that the absence of an anti-repeat device did not cause plaintiff's injury. However, plaintiff testified at trial that the ram did not stop. Although defendant now argues it was improper to "rehabilitate" plaintiff's testimony on redirect with other portions of his deposition testimony, at trial defendant agreed with the judge that plaintiff could clarify his testimony in this manner.

Another conflict in the testimony was Barnett's denial that it was reasonably foreseeable that the press would be used in a single-stroke operation, disputing the testimony of Lobodzinski and Heyda. It was the jury's function to resolve these inconsistencies and it resolved them in plaintiff's favor.

A review of the evidence at trial establishes that the jury's verdict was not against the manifest weight of the evidence.

Affirmed.

GORDON and McNULTY,* JJ., concur.

*After oral argument in this case, Presiding Justice Lorenz recused himself from further participation and Justice McNulty was substituted. Although she did not participate in the oral argument, she has read the briefs, audited the tape of the oral argument, and otherwise participated in the decision-making process.