# Illinois Official Reports

## Appellate Court

---

### *Adwent v. Novak*, 2017 IL App (1st) 160683

---

| | |
|---|---|
| Appellate Court Caption | ZBIGNIEW ADWENT, Plaintiff-Appellant, v. RICHARD B. NOVAK, M.D., Defendant-Appellee. |
| District & No. | First District, First Division<br>Docket No. 1-16-0683 |
| Rule 23 order filed<br>Motion to publish<br>granted<br>Opinion filed | May 22, 2017<br><br>June 26, 2017<br>July 17, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-L-10734; the Hon. Casandra Lewis, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Bradley Z. Schulman, of Motherway & Napleton, LLP, of Chicago, for appellant.<br><br>Scott L. Howie, Alan J. Schumacher, and Suzanne M. Crowley, of Pretzel & Stouffer, Chtrd., of Chicago, for appellee. |
| Panel | JUSTICE MIKVA delivered the judgment of the court, with opinion.<br>Presiding Justice Connors and Justice Harris concurred in the judgment and opinion. |

**OPINION**

¶ 1    Plaintiff Zbigniew Adwent brought a medical malpractice suit against defendant Dr. Richard B. Novak. On October 5, 2015, a jury returned a verdict in favor of Dr. Novak. On appeal, Mr. Adwent claims that the trial court abused its discretion in two respects: (1) by barring testimony from Mr. Adwent's expert witness, James Hayes, that Dr. Novak's chart regarding his treatment of Mr. Adwent was missing a page and (2) by refusing to give a jury instruction on contributory negligence. Because we find neither of these rulings are an abuse of the trial court's discretion, we affirm.

¶ 2                                    BACKGROUND

¶ 3    Mr. Adwent filed his initial complaint on September 20, 2012, alleging that, during two office visits in September 2010, Dr. Novak was negligent in failing to properly investigate or treat his medical conditions, which included back pain, Group B streptococcus, bacteremia, and diabetes. The initial complaint was brought against Dr. Novak and Novak Family Medical, but two days before trial Mr. Adwent was given leave to file a first amended complaint against Dr. Novak only. In his answer to Mr. Adwent's first amended complaint, which was filed during the trial on October 1, 2015, the only affirmative defense that Dr. Novak pleaded was Mr. Adwent's failure to mitigate damages.

¶ 4                              A. Pretrial Proceedings

¶ 5    On September 19, 2014, Mr. Adwent filed disclosures pursuant to Illinois Supreme Court Rule 213(f) (eff. Jan. 1, 2007), disclosing his intention to call James Hayes as a forensic document examiner. Attached to the disclosures was a report in which Mr. Hayes noted that he had examined 22 pages of the "original Novak Family Medical office chart" for Mr. Adwent and opined: "Based upon the examination and comparisons of the exhibits I have determined that the exhibits submitted are not the complete record of the Zbigniew Adwent medical records." Mr. Hayes further explained that his conclusion was based on "the presence of developed latent images on the submitted documents that could not be correlated to the records. Images from page 21A are not found in the records."

¶ 6    On September 20, 2015, Dr. Novak filed a motion *in limine* to bar Mr. Hayes from testifying, arguing that Mr. Hayes's opinion was "inconclusive and speculative." Attached to the motion was a transcript of Mr. Hayes's December 2014 discovery deposition, in which he explained that his opinion was based on latent images found on a billing record at page 21A of Mr. Adwent's medical records. According to Mr. Hayes, these latent images reflected writing—including the initials "FU," which he believed referred to "follow up," as well as "entries for blood pressure and pulse and other entries that ha[d] not been deciphered but [we]re clearly visible on the document"—that had been made on another piece of paper while it was laid on top of page 21A. Mr. Hayes concluded that, because the latent images on page 21A did not appear as actual writing on any page in Mr. Adwent's medical records, the records were not complete.

¶ 7    Mr. Hayes conceded in his deposition that he had no knowledge of whether the writing that appeared in the latent images on page 21A concerned Mr. Adwent. Mr. Hayes also could not be sure that the writing was Dr. Novak's; although the handwriting on the latent images

was consistent with Dr. Novak's handwriting on Mr. Adwent's medical chart, Mr. Hayes "had not rendered an opinion regarding authorship." Mr. Hayes also acknowledged the narrow scope of his opinion:

> "Q. So your single opinion in this case is that there are latent images shown on Page 21A, the billing record entry, that you cannot correlate to any other handwritten entry on any other page of Mr. Adwent's medical chart.
>
> A. Correct."

¶ 8 The trial court granted Dr. Novak's motion to bar Mr. Hayes from testifying at trial. The court noted that the proposed testimony was "totally speculative" and that there was no way to know if the writing in the latent image was "work related" or even "related to this particular patient." The court continued, "[a]nd if it is related to this particular patient, we don't know what he was trying to say. I mean, I don't know how that could be probative, other than to go to some, you know—I don't know, some conspiracy kind of thing."

¶ 9 **B. Offer of Proof**

¶ 10 During trial, Mr. Adwent made an offer of proof as to what Mr. Hayes would have testified to, questioning Mr. Hayes on the stand outside of the jury's presence. That testimony, consistent with Mr. Hayes's deposition testimony, was that notations had been made on a document which appeared in latent images on page 21A of Mr. Adwent's medical records, but that the document with those notations was not a part of Mr. Adwent's medical chart as maintained by Dr. Novak. Mr. Hayes also acknowledged that he could not determine whether that missing document concerned Mr. Adwent and that he had "no way of knowing" what patient was referred to in the writing appearing as a latent image on page 21A. In response to questioning from Mr. Adwent's attorney, Mr. Hayes reiterated that the conclusion he drew from Mr. Adwent's medical records was simply that "the document upon which the F/U, the temperature and the BP were written d[id] not exist in the chart that [he] examined, and [was] not a part of the characteristics of the exhibits that [he] examined."

¶ 11 **C. Trial**

¶ 12 The trial began on September 21, 2015. The evidence was that on August 31, 2010, prior to going to see Dr. Novak, Mr. Adwent was admitted to St. Alexius Medical Center and diagnosed with Group B streptococcus, bacteremia, cholelithiasis, low back pain, lumbar disc disease, Type 2 diabetes, and hypertension. Mr. Adwent was told that he needed an MRI, but would have to pay for it before he received it. Mr. Adwent left the hospital against medical advice on September 7, 2010, because, according to his testimony, he could not afford the MRI and the hospital was not helping him. Although Mr. Adwent could not recall this at trial, one of his children testified that Mr. Adwent subsequently made a visit to the emergency room at Good Shepherd Hospital on September 19, 2010.

¶ 13 Mr. Adwent first saw Dr. Novak in the doctor's office on September 21, 2010, accompanied by three of his adult children and complaining of intractable back pain. Mr. Adwent testified that Dr. Novak did not tell him to go to the hospital or to a back specialist but, instead, prescribed him medication and told him to come back if he did not feel better. Mr. Adwent also testified that he did not hear Dr. Novak tell his children that he needed to go

to the hospital and that he did not remember telling Dr. Novak that he had been in the hospital for a week or in the emergency room.

¶ 14 Dr. Novak testified, and his patient notes for September 21 reflected, that Mr. Adwent's chief complaint that day was severe lower back pain and that Dr. Novak's initial impression was exacerbation of Mr. Adwent's lower back pain due to sciatica caused by a herniated disc. Dr. Novak testified that he prescribed a drug regimen to treat the lower back pain and that he told Mr. Adwent that he needed either to see a back specialist or go to the hospital because Dr. Novak could only provide him with immediate help. Dr. Novak testified that he did not schedule a follow-up visit because he did not expect to see the patient again. Dr. Novak acknowledged that these recommendations were not in Mr. Adwent's medical records but testified that Mr. Adwent gave no indication that he would not follow them.

¶ 15 Mr. Adwent testified that he returned to see Dr. Novak again on September 27, 2010, because he again began to feel very severe pain. He was accompanied on the second visit by two of his adult children. Mr. Adwent testified that Dr. Novak did not mention the need for a hospital visit but gave him an injection and prescribed more medication.

¶ 16 Dr. Novak testified that, at the September 27, 2010, visit, he again urged Mr. Adwent to go to the hospital. This recommendation was in Dr. Novak's notes, which were included with Mr. Adwent's medical chart for that date. Dr. Novak's notes also reflected that Mr. Adwent told Dr. Novak that he would not go to the hospital. Dr. Novak did not see Mr. Adwent again after that date until the lawsuit was filed.

¶ 17 A day or two after Mr. Adwent saw Dr. Novak on September 27, 2010, Mr. Adwent became quite ill and was admitted to the hospital with what he alleged was septic shock, as well as other serious medical conditions. He was in the hospital for two months, had multiple surgeries, and incurred significant medical expenses.

¶ 18 During the jury instruction conference, Mr. Adwent requested that the court give an instruction on contributory negligence and a jury verdict form that allowed for contributory negligence. Mr. Adwent urged the trial court to provide these to the jury over Dr. Novak's objection because there "was a ton of evidence of contributory negligence." As Mr. Adwent pointed out at the jury instruction conference, the defendants' answer to the original complaint pleaded both failure to mitigate and contributory negligence as affirmative defenses. The trial court refused to give any instruction on contributory negligence because Dr. Novak did not plead the affirmative defense of contributory negligence in his answer to the first amended complaint. The record on appeal contains no specific instruction or jury form submitted by Mr. Adwent to the trial court.

¶ 19 On October 5, 2015, the jury returned a verdict in favor of Dr. Novak. On November 2, 2015, Mr. Adwent filed a motion for a new trial that raised both of the issues that he raises on appeal and that the trial court denied on February 16, 2016.

¶ 20             JURISDICTION

¶ 21 Mr. Adwent timely filed his notice of appeal on March 9, 2016. Accordingly, this court has jurisdiction pursuant to Illinois Supreme Court Rules 301 and 303, governing appeals from final judgments entered by the circuit court in civil cases. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. Jan. 1, 2015).

ANALYSIS

A. Exclusion of Mr. Hayes's Testimony

Mr. Adwent's first claim of error is that the trial court improperly excluded the testimony of Mr. Hayes. The decision of whether to admit or exclude evidence, including whether to allow an expert to present certain opinions, rests solely within the discretion of the trial court and this court will not reverse on this basis absent an abuse of the court's discretion. *Jones v. Beck*, 2014 IL App (1st) 131124, ¶ 16. Such an abuse of discretion occurs only if no reasonable person would take the view adopted by the trial court. *Id.* When considering the reliability of expert testimony and determining the admissibility of that testimony, a trial judge "should balance its probative value against its prejudicial effect." *People v. Becker*, 239 Ill. 2d 215, 235 (2010). "In the exercise of his or her discretion, the trial judge should also carefully consider the necessity and relevance of the expert testimony in light of the facts in the case before admitting it for the jury's consideration." *Id.*

Mr. Adwent argues:

> "The probative value of Mr. Hayes [*sic*] testimony that there were missing documents from the patient's chart substantially outweighs the prejudicial effect on the defendant because it shows that the defendant failed to properly investigate the patient's chart and inappropriately gave an IM steroid injection without exploring the plaintiff's underlying condition."

As an initial matter, we reject the premise of Mr. Adwent's arguments: that Mr. Hayes could have testified that a document was missing from Mr. Adwent's medical chart. Although the opinion Mr. Hayes offered in his report was that Mr. Adwent's medical records were not complete, he backed away from this conclusion in both his deposition and during his offer of proof testimony, acknowledging that all that he could opine was that he could not "correlate" the handwriting on the latent images on page 21A "to any other handwritten entry on any other page of Mr. Adwent's medical chart" and that "the document upon which the F/U, the temperature and the BP were written d[id] not exist in the chart that [he] examined, and [was] not a part of the characteristics of the exhibits that [he] examined." Thus, it appears that Mr. Hayes would not have, in fact, testified that there were documents missing from Mr. Adwent's medical chart.

Even if Mr. Hayes had remained willing to testify that, in his opinion, a document was missing from Mr. Adwent's medical chart, such an opinion would not have been supported by Mr. Hayes's observations. Those observations made clear that Mr. Hayes did not know whether the document from which writing appeared as latent images on page 21A had ever been a part of Mr. Adwent's medical chart, whether it was authored by Dr. Novak, or whether it even concerned Mr. Adwent. It is well settled that "[a]n expert witness' opinion cannot be based on mere conjecture and guess." *Dyback v. Weber*, 114 Ill. 2d 232, 244 (1986). To the extent that Mr. Hayes would have offered such an opinion to the jury, it would not have been an abuse of the trial court's discretion to bar that testimony. Thus, we do not accept the premise that Mr. Hayes could have testified even to the first of these alleged connections between the latent images that he observed on page 21A of Mr. Adwent's medical chart and the issues in this case—that there was a document missing from Mr. Adwent's medical chart.

Moreover, even if Mr. Adwent had been able to make that first connection—that a document was missing—he could not have tied this evidence to any of the other connections

that he argues make Mr. Hayes's testimony relevant. Mr. Hayes acknowledged at his deposition and during the offer of proof that he could not say that the writing in the latent images on page 21A concerned Mr. Adwent. Mr. Hayes also refused to provide any opinion that Dr. Novak had authored this allegedly missing document. Thus, even if a document was "missing," it might not have been authored by Dr. Novak and it might not have concerned Mr. Adwent.

¶ 29　　Finally, even if Mr. Hayes could have testified that, in his opinion, there was a missing record regarding Mr. Adwent and that the missing record was authored by Dr. Novak, Mr. Hayes acknowledged that he knew almost nothing about what was on that document. He could only testify that the latent images suggested that the document contained the letters "FU" and had entries that appeared to be for blood pressure and pulse. Mr. Hayes was unable to testify as to anything else that appeared on that document. It is a huge leap to suggest, as Mr. Adwent argues, that this somehow "shows" that Dr. Novak failed to investigate the patient's chart or gave the patient inappropriate care.

¶ 30　　To the extent that Mr. Adwent argues that the bare fact of a missing document from his medical chart, whatever the substance and whoever the author, would undermine Dr. Novak's credibility, for the reasons outlined above, we do not believe that Mr. Hayes would have testified that he believed a document was "missing" or that, if he had chosen to testify that way, such testimony would have been admissible.

¶ 31　　Since there would have been little, if any, probative value to Mr. Hayes's testimony, Dr. Novak need not have demonstrated much prejudicial impact. *Becker*, 239 Ill. 2d at 235 (prejudicial effect is balanced against probative value). However, Mr. Adwent's argument on appeal illustrates the prejudicial impact that this testimony could have had on the jury. Mr. Adwent's counsel clearly intended to use that testimony to suggest that Mr. Adwent's medical records had perhaps been altered to cover the doctor's inappropriate treatment of his patient. Such a use of this testimony would be completely speculative and highly prejudicial.

¶ 32　　In sum, there can be little doubt that the trial court did not abuse its discretion in granting the motion *in limine* and barring Mr. Hayes's testimony in this case.

¶ 33　　　　　　　　　　　　　　　　B. Jury Instruction

¶ 34　　Mr. Adwent next argues that the trial court erroneously refused to give the jury either an instruction or a verdict form that addressed contributory negligence. Mr. Adwent acknowledges that Dr. Novak did not request such an instruction and was not pleading an affirmative defense of contributory negligence at the time that the jury began its deliberations. However, Mr. Adwent claims that he was prejudiced because the jury was allowed to hear significant evidence about his own conduct—including that he left St. Alexius Medical Center against medical advice and failed to provide Dr. Novak with an adequate medical history—that was relevant only to contributory negligence. Mr. Adwent acknowledges that, on appeal, our review of this issue is limited to determining whether the trial court abused its discretion. *Schultz v. Northeast Illinois Regional Commuter R.R. Corp.*, 201 Ill. 2d 260, 273 (2002). We find no such abuse of discretion in this case.

¶ 35　　First, as Dr. Novak points out, Mr. Adwent has not adequately presented this issue because the record on appeal does not include the proposed jury instruction. We have held that, "[u]nless all instructions, both given and refused, are contained in the record, 'a claim of

error based on the giving or refusal of instructions will not be heard.' " *People v. Reynolds*, 294 Ill. App. 3d 58, 69 (1997) (quoting *People v. Daily*, 41 Ill. 2d 116, 121 (1968)).

¶ 36     Moreover, even if Mr. Adwent properly presented the issue, or we assumed that he requested the contributory negligence instruction and jury verdict form from the Illinois Pattern Jury Instructions, we would find there was no error. The law is clear that a party cannot demonstrate that the trial court abused its discretion by failing to give a jury instruction without demonstrating that prejudice has resulted. *Dillard v. Walsh Press & Die Co.*, 224 Ill. App. 3d 269, 279-80 (1991). Mr. Adwent cannot demonstrate that the trial court's refusal of his request for an instruction on contributory negligence resulted in any prejudice to him.

¶ 37     Contributory negligence reduces a plaintiff's damages. *Gruidl v. Schell*, 166 Ill. App. 3d 276, 280 (1988). It is difficult to imagine how the failure to give an instruction that could only have served to reduce the damages that Mr. Adwent would have been awarded had he prevailed in this case could have prejudiced Mr. Adwent where the jury found in favor of Dr. Novak and no damages were awarded in the first instance. Therefore, the outcome in this case could not have been impacted by the trial court's failure to give an instruction on contributory negligence.

¶ 38     In apparent recognition of this problem, Mr. Adwent argues that some of the evidence presented at trial should not have been admitted if an affirmative defense of contributory negligence was not going to be asserted. As Mr. Adwent notes, although Dr. Novak and Novak Family Medical asserted the affirmative defense of contributory negligence in the answer to Mr. Adwent's initial complaint, that complaint was superseded by Mr. Adwent's first amended complaint, which Dr. Novak did not answer until the middle of the trial, when evidence of Mr. Adwent's own conduct in leaving the hospital against medical advice and in failing to fully inform Dr. Novak about his medical history had already been presented to the jury. However, these facts do not help Mr. Adwent's position.

¶ 39     Mr. Adwent's arguments go to the admissibility of evidence, not the appropriate jury instructions to be offered. Mr. Adwent did not object to this evidence at trial and did not address the propriety of its admission in his posttrial motion or on appeal. Thus, the issue of whether this evidence about Mr. Adwent's own conduct should have been admitted is not even before us. Moreover, as Dr. Novak points out, the evidence about Mr. Adwent's conduct was relevant to demonstrate that his actions were the sole proximate cause of his injuries; it was based on this evidence that the trial court gave a jury instruction on sole proximate cause.

¶ 40     Mr. Adwent also appears to argue that, by failing to give a contributory negligence instruction and verdict form, the trial court took away the possibility of a compromise verdict, in which the jury could have found Dr. Novak at fault but also found Mr. Adwent partially responsible. This is completely speculative and, in fact, simply not possible. As Dr. Novak notes, pursuant to the Illinois Pattern Jury Instructions verdict forms, the jury would not have been instructed to even consider the issue of contributory negligence unless and until it found that Dr. Novak was liable for Mr. Adwent's injuries. At that point, the jury would have been instructed that, if the plaintiff's contributory negligence was "50% or less of the total proximate cause of the injury or damage for which recovery is sought," it should use verdict form B, which would allow it to deduct from the damages awarded a percentage attributable to the plaintiff. Illinois Pattern Jury Instructions, Civil, No. B45.02 (2011). The

compromise verdict Mr. Adwent speculates may have resulted if the jury had been instructed on contributory negligence was thus legally incompatible with the jury's finding that Dr. Novak was not liable for Mr. Adwent's injuries.

¶ 41　　In sum, Mr. Adwent has failed to show he was prejudiced by the trial court's refusal to give a jury instruction on contributory negligence. Accordingly the court did not abuse its discretion by refusing or failing to give such an instruction.

¶ 42　　　　　　　　　　　　　　　　CONCLUSION

¶ 43　　For the foregoing reasons, we affirm the judgment of the trial court.

¶ 44　　Affirmed.